A06A0969. FREEMAN v. THE STATE.
(638 SE2d 358)

ANDREWS, Presiding Judge.

Cornelius Detron Freeman, convicted by a jury of aggravated sodomy and enticing a child for indecent purposes,[1] appeals from the trial court's denial of his motion for new trial, alleging that his trial counsel and his initial appellate counsel rendered ineffective assistance and that the trial court erred in not holding a competency hearing.

1. Viewed with all inferences in favor of the jury's verdict, *Eady v. State,* 256 Ga. App. 696 (569 SE2d 603) (2002), the evidence was that Freeman was the brother of Gwendolyn Thomas and the uncle of six-year-old K. F. On October 3, 2004, Thomas came home around 8:30 a.m. from her overnight shift at Wal-Mart. As she entered the kitchen, she saw her son, K. F., pulling up his pants and Freeman running up the stairs. She asked K. F. what had happened and he said

---

[1] Freeman was also charged with and convicted of aggravated child molestation, but that count merged with the aggravated sodomy conviction for sentencing.

that "Detron was doing the nasty to me." Thomas ran upstairs where Freeman had run into the bathroom and shut the door. Thomas went into her bedroom and woke up Eric Reed, her then boyfriend, and demanded to know why K. F. had been downstairs alone. She then confronted Freeman, who denied anything had happened and left the house. Reed then went and got his two brothers, Eddy and Corey, so they could confront Freeman, but when they returned, Freeman was gone.

Eddy Reed asked K. F. what happened and K. F. said Freeman had been messing with him and had stuck his "thing" in his bottom. On the way to take his brothers home, Eric Reed called 911 and reported the incident.

Patrolman Gilliam responded and spoke to Thomas and Eric Reed. Thomas, who was crying, told him that she had come home to find K. F. pulling up his pants and Freeman running up the stairs. Sergeant Preston, the detective assigned to the case, took K. F. to the Sunshine Center where he was interviewed by Davis, a forensic interviewer. During that interview, which was videotaped and played for the jury, K. F. told Davis that Freeman was "doing it to me." K. F. said Freeman woke him up, took him downstairs, bent him over a chair, and "stuck his thang in my butt." On an anatomically correct drawing, K. F. identified buttocks as "butt" and the penis as "thang."

Upon examination by Bell, a specially trained sexual assault nurse examiner, physical findings consistent with anal penetration were found. K. F. also told Bell that Freeman "got on top of me" and "put his thang in me."

The next day, Sgt. Preston interviewed Freeman in the presence of his mother. After being advised of his rights, Freeman gave a statement which was written down by his mother because Freeman said he did not write that well. In it, he said that, to the best of his knowledge, he was telling the truth about what was supposed to have happened and that he had no contact with K. F. He said that Thomas had different men over her children and was telling lies.

At trial, Freeman testified that, after attending a party where he consumed several beers, he returned to Thomas' house around 4:30 a.m. He went upstairs and borrowed a cigarette from Eric Reed, who was awake. Then, he went into the bathroom where he smoked the cigarette and stayed for 25 or 30 minutes. When he came out of the bathroom, Thomas accused him of messing with K. F., which he denied. Because she was angry, Freeman left the house.

Credibility of the witnesses was for the jury and we find the evidence legally sufficient. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); see *Tyler v. State*, 279 Ga. App. 809, 811 (1) (632 SE2d 716) (2006).

2. In his second enumeration, Freeman contends that he received ineffective assistance of trial counsel.

Freeman was represented at trial by Ron Beckstrom and during his motion for new trial by Linda Malveaux. Malveaux did raise the issue of ineffective assistance of trial counsel at the hearing, although she did not call Beckstrom to testify. She contended that trial counsel was ineffective for failing to call a defense forensic interviewer; for failing to object to the testimony of the State's forensic interviewer which commented on the truthfulness of K. F.; and for failing to object to Corey Reed's and Eddy Reed's testimony regarding child hearsay of K. F.

Trial counsel's strategy was to argue that Eric Reed was the one who had molested K. F. He presented evidence regarding inconsistencies in Thomas' statements regarding what happened, as well as the testimony of K. F.'s 11-year-old cousin who said K. F. told him, after returning from the medical examination, that "Tron didn't do it. Eric had did it."

In order to prove his claim of ineffective assistance of counsel, Freeman must establish both prongs of the test set out in *Strickland v. Washington*, 466 U. S. 668, 695-696 (104 SC 2052, 80 LE2d 674) (1984): (1) that his trial counsel's performance was deficient and (2) that counsel's inadequate performance "so prejudiced his defense that a reasonable probability exists that the result of the trial would have been different but for that deficiency." (Punctuation and footnote omitted.) *Ward v. State*, 274 Ga. App. 511, 514 (4) (618 SE2d 154) (2005). "Failure to satisfy either prong of this two-part test is fatal to an ineffective assistance claim." (Footnote omitted.) Id. at 515 (4).

With regard to the deficiency prong, there is a strong presumption that trial counsel's performance is not deficient but falls within the wide range of reasonable trial strategy, in which unwise tactics do not amount to ineffective assistance of counsel. *Redd v. State*, 232 Ga. App. 666, 668 (4) (502 SE2d 467) (1998). Decisions about which witnesses to call are generally matters of trial strategy, *Nicely v. State*, 277 Ga. App. 140, 142 (2) (625 SE2d 538) (2006), and provide no grounds for reversal unless they are so patently unreasonable that no competent attorney would have chosen that tactic. *Godfrey v. State*, 274 Ga. App. 237, 239 (1) (a) (617 SE2d 213) (2005).

As the claims of ineffectiveness of counsel relate to matters outside of the record, trial counsel's testimony is required to evaluate the claim. See *Dawson v. State*, 258 Ga. 380, 381 (3) (369 SE2d 897) (1988). Even though a hearing was held on Freeman's motion for new trial, his defense counsel was not called to testify and, without trial counsel's testimony, his actions are presumed strategic. *Redd v. State*, supra at 668. Therefore, Freeman did not establish that his

trial counsel's performance was deficient in failing to call a forensic interviewer as a witness.

Even assuming that Freeman could show that failing to call such a witness constituted ineffective assistance, he has failed to show how that omission prejudiced his defense and would have changed the outcome of the trial. *Vanholten v. State*, 271 Ga. App. 782, 784 (2) (d) (610 SE2d 555) (2005).

Regarding trial counsel's failure to object to the testimony of the forensic interviewer, "[i]t is true that the credibility of a witness is a matter for the jury, and a witness' credibility may not be bolstered by the opinion of another witness as to whether the witness is telling the truth." (Footnote omitted.) *Branesky v. State*, 262 Ga. App. 33, 36 (3) (a) (584 SE2d 669) (2003). However, the forensic interviewer's testimony was not improper. This Court has held that "[a]lthough an expert witness may not testify as to his opinion of the victim's truthfulness, the witness may express an opinion as to whether medical or other objective evidence in the case is consistent with the victim's story." (Citation and punctuation omitted.) *Satterwhite v. State*, 212 Ga. App. 543, 543-544 (2) (442 SE2d 5) (1994). See also *Odom v. State*, 243 Ga. App. 227 (1) (531 SE2d 207) (2000); *State v. Oliver*, 188 Ga. App. 47, 51 (2) (372 SE2d 256) (1988). Here, the forensic interviewer gave her opinion on K. F.'s intelligence, based on her interview of him. She also gave her opinion, based on her training and experience, that K. F.'s reactions to certain questions were consistent with his having been abused. Therefore, there was no error in the trial court allowing this testimony or in trial counsel's decision not to object, and, as a result, no basis for an ineffective assistance claim. See *Biswas v. State*, 255 Ga. App. 339, 346 (6) (b) (565 SE2d 531) (2002) ("Failure to make a meritless objection is not evidence of ineffective assistance of counsel.") (citation omitted).

Regarding the statements of K. F. made to Corey and Eddy Reed within hours of the incident, "[d]eclarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, shall be admissible in evidence as part of the res gestae." OCGA § 24-3-3. This Court has held that testimony from a victim's mother about the victim's telephone call to her immediately after having been raped was admissible as part of the res gestae. *Howard v. State*, 228 Ga. App. 784, 785 (2) (492 SE2d 759) (1997). Also, we have held that a child molestation victim's statements made several hours after the offense were admissible as res gestae evidence. *Drummond v. State*, 275 Ga. App. 86, 88 (619 SE2d 784) (2005).

Again, no basis for an ineffectiveness claim has been shown. *Biswas v. State*, supra.

3. Freeman's first enumeration is that his initial appellate counsel rendered ineffective assistance by failing to call trial counsel to testify at the motion for new trial hearing.

As set out above, following denial of his motion for new trial, Freeman obtained new appellate counsel to represent him. He asserts for the first time in this appeal that Malveaux was ineffective in failing to call the trial attorney to testify at the motion hearing. The first issue we must address is whether new counsel for Freeman raised the issue of ineffective assistance of appellate counsel in a timely fashion:

> It is well settled that a defendant must raise all allegations of ineffective assistance of counsel as soon as practicable. . . . The rule is consistent: New counsel must raise the ineffectiveness of previous counsel at the first possible stage of post-conviction review. When new counsel raises the issue of ineffective assistance, this Court will review only those allegations of ineffectiveness raised. Any remaining allegations are procedurally barred.

(Punctuation and footnotes omitted.) *Upshaw v. State*, 257 Ga. App. 199, 201-202 (4) (570 SE2d 640) (2002). Because Freeman's current appellate counsel did not undertake his representation until after the appeal was filed, she did not have the opportunity to raise his claim of ineffective assistance before the trial court. Under such circumstances, this Court will generally remand the case for an evidentiary hearing on the issue. *Grier v. State*, 262 Ga. App. 777, 781 (3) (586 SE2d 448) (2003). "Remand is not mandated, however, if we can determine from the record that [Freeman] cannot satisfy the two-prong test set forth in *Strickland v. Washington*. . . ." (Citation and punctuation omitted.) Id. Regarding Freeman's argument that post-conviction representation was deficient because of failure to call his trial attorney as a witness at the motion hearing, we find that Freeman cannot satisfy the two-prong *Strickland v. Washington* test because he cannot show how this omission prejudiced his post-conviction efforts. Even if this testimony had been presented and it somehow demonstrated that the trial attorney's performance was deficient, we have already found that any alleged deficiencies did not prejudice Freeman's defense at trial in Division 2.

Therefore, Freeman cannot establish that the failure to call the trial attorney affected the outcome of his motion for new trial.

4. Finally, Freeman contends that the trial court erred in failing, sua sponte, to conduct a hearing on his competency to stand trial.

Following attorney Beckstrom's appearance as Freeman's counsel on March 3, 2005, he filed a petition for psychiatric evaluation of

Freeman on March 5. No special plea of not guilty by reason of insanity or incompetence to stand trial was filed. On March 15, 2005, Dr. Leonard Bailey of Southwestern State Hospital conducted a competency examination of Freeman. In his report, Dr. Bailey concluded that Freeman was competent to stand trial.

Although Freeman did not formally raise the issue of his competency to stand trial or seek a hearing regarding his competency following receipt of Dr. Bailey's report,

> a trial court is to conduct, sua sponte, a competency hearing when there is information which becomes known to it, prior to or at the time of the trial, sufficient to raise a bona fide doubt regarding the defendant's competence. *Collins v. State*, 259 Ga. App. 587 (2) (578 SE2d 201) (2003). The salient question is whether the trial court received information which, objectively considered, should reasonably have raised a doubt about the defendant's competency and alerted the trial court to the possibility that the defendant could neither understand the proceedings, appreciate their significance, nor rationally aid his attorney in his defense. *Collins v. State*, supra at 587 (2); *Baker v. State*, 250 Ga. 187, 190 (1) (297 SE2d 9) (1982). In order to answer this question, the appellate court must focus on any evidence of the defendant's irrational behavior, the defendant's demeanor at trial, and any prior medical opinion regarding the defendant's competence to stand trial. *Collins v. State*, supra.

*Traylor v. State*, 280 Ga. 400, 404 (4) (a) (627 SE2d 594) (2006).

Freeman attended special education classes because he was diagnosed as mildly mentally handicapped. According to Dr. Bailey's review of Freeman's school records and his testing and interview of Freeman, his opinion was that Freeman's "receptive and expressive language skills are relatively well-developed and approximately consistent with an 'average' individual of between 12 and 15 years of age." Dr. Bailey evaluated Freeman's appreciation of the charges; the range and nature of possible penalties; the adversarial nature of the legal process; his capacity to disclose pertinent information; his ability to manifest appropriate courtroom behavior; and his capacity to testify relevantly. He found Freeman "acceptable" in all these areas and opined that he was competent to stand trial.

New counsel focuses on one sentence in Dr. Bailey's evaluation of Freeman's ability to manifest appropriate courtroom behavior in support of her argument that the trial court erred in not sua sponte conducting a competency hearing: "[t]herefore, although Mr. Freeman is unlikely to present as a behavior problem in the courtroom, his

capacity to actively participate as a defendant in the criminal justice system appears questionable at best."

At trial, following the selection and seating of the jury and opening arguments, the trial court stated that "I'm going to take this multiple page written competency evaluation that we talked about on the record yesterday from Dr. Bailey at Southwestern State saying that he is competent to stand trial. I'm just going to put it in the clerk's file in an envelope. I'll write on the outside, sealed."[2]

There is no other reference in the transcript to this report, although, from the trial court's statement, we conclude there was discussion of it between court and counsel following the discharge of the jury the prior day.

Having considered the report, the trial court concluded Freeman was competent and did not conduct further inquiry. We find no additional inquiry was necessary. Here, as in *Traylor*, the accused was developmentally disabled. Also, here as there, examination of the transcript and record does not demonstrate that his behavior at trial or medical history should have caused the trial court to, sua sponte, conduct a competency hearing. *Traylor v. State*, supra at 404 (4) (a); see also *Maddox v. State*, 278 Ga. App. 191, 192 (3) (628 SE2d 625) (2006); *Collins v. State*, supra at 588 (2).

*Judgment affirmed. Barnes and Bernes, JJ., concur.*

DECIDED NOVEMBER 1, 2006.

*Sarah L. Gerwig-Moore*, for appellant.

*Kenneth B. Hodges III, District Attorney, Christopher S. Cohilas, Assistant District Attorney*, for appellee.

---

[2] Although not originally contained in the record, it has been made a supplemental record by order of this Court.