A09A0956. HARTLEY v. THE STATE.
(683 SE2d 109)

BERNES, Judge.

This case arises out of allegations that Kenneth Hartley attempted to stab his estranged wife with a butcher knife and, the following day, fired a shotgun twice at an acquaintance who had witnessed the domestic dispute. The jury found Hartley guilty of two counts of aggravated assault, and the trial court denied his motion for new trial. On appeal, Hartley contends that his trial counsel was ineffective for failing to locate and call certain witnesses who would have supported his affirmative defense of justification. Hartley further contends that the trial court erred by not exercising its discretion and deciding whether he was entitled to a new trial on the general grounds that the verdict was contrary to the evidence, contrary to principles of justice and equity, and strongly against the weight of the evidence. For the foregoing reasons, we conclude that Hartley received effective assistance from his trial counsel. We agree with Hartley, however, that the trial court failed to exercise its discretion and decide his claims based upon the general grounds. Accordingly, the trial court's order denying Hartley's motion for new trial is vacated in part and the case remanded with the instruction that the trial court exercise its discretion.

Following a criminal conviction, we view the evidence in the light most favorable to the jury's verdict. *Wallace v. State*, 294 Ga. App. 159 (1) (669 SE2d 400) (2008). So viewed, the evidence showed that on the evening of December 9, 2005, Hartley was at home drinking beer following a long day of construction work. Hartley was joined by an acquaintance, Chris Lockley. Hartley and Lockley had known one another for approximately 13 years. Both worked in construction and had worked together on the job earlier that day. While they were drinking, Hartley's estranged wife arrived at the home. She and Hartley were not living together at the time. They had been fighting for weeks and were considering a divorce.

Hartley and his wife became embroiled in a heated argument in front of Lockley. The argument intensified and Hartley became enraged when his wife refused to leave the home. He threatened to kill her. Hartley then pushed his wife, grabbed a butcher knife from the kitchen counter, chased her with the knife, and attempted to stab her. Lockley stepped between them and grabbed Hartley's arm to

prevent him from cutting his wife. He was able to calm Hartley down enough for Hartley's wife to escape out the front door and drive away. Lockley left as well. Hartley passed out on the sofa.

The next day, Lockley returned to Hartley's home, where he found Hartley in his car in the driveway drinking beer. Hartley "was not in real good shape," and Lockley decided to help Hartley back inside his house. When he opened the front door to the house, Lockley observed a shotgun and a number of shells on the bar in the kitchen. Concerned for Hartley's safety, Lockley swept the shells into a drawer and hid the shotgun behind a couch. After hiding the shotgun and shells, Lockley went back outside, where Hartley had passed out and had fallen out of his car. Lockley assisted Hartley back into the house, laid him on the couch, and left the residence.

That evening, Hartley called Lockley and angrily demanded to know where his shotgun had been hidden. Lockley arrived at Hartley's home approximately 30 minutes later. Hartley was "pretty messed up" from all of the beer he had been drinking. Lockley showed Hartley where he had hidden the shotgun. After he was shown the shotgun, Hartley asked Lockley to get them a couple of beers from the refrigerator. Lockley complied.

As Lockley closed the refrigerator, Hartley was suddenly beside him pressing the shotgun to his temple. Hartley said, "This ain't no f'ing joke. I'm fixing to blow your G. D. head off." Lockley responded by raising his arm and knocking the shotgun up and away from his head. At that instant, Hartley fired the shotgun. Lockley fell backward, stunned but not hit. The shot went into the kitchen ceiling.

Hartley reloaded the shotgun. Lockley attempted to escape through the front door, but Hartley blocked him and again threatened to kill him. Hartley fired a second shot, but Lockley dove out of the way and avoided being hit. The bullet struck the ceiling near the hole from the first shot.

As Hartley attempted to reload a third time, Lockley charged him and elbowed him in the face. The two struggled over the shotgun. Lockley successfully wrestled the shotgun from Hartley and struck him with the butt of the gun in the face and stomach. Hartley screamed for Lockley to give him back his shotgun. Lockley told him that he could have the shotgun if he would stop blocking the front door. Hartley agreed, and Lockley fled through the open door still holding the shotgun. He threw the shotgun into the woods beside the home, headed to his truck, and drove away.

Once safely at his own home, Lockley called the police. Officers arrived there shortly thereafter, and Lockley reported to them what had occurred that evening and the previous evening at Hartley's home. Hartley's wife was contacted and arrived at Lockley's home approximately 30 minutes later. She provided a written statement to

the police in which she reported that Hartley had chased her with a butcher knife the previous evening and had threatened to kill her. After receiving this information, the police went to Hartley's home, but he was no longer there.

Hartley subsequently was apprehended and indicted on two counts of aggravated assault — one count for brandishing the butcher knife at his wife, and one count for firing the shotgun at Lockley. At trial, Lockley testified on behalf of the state to the events as set out above. The state also presented testimony from the responding officers and photographs of the shotgun holes in the ceiling of Hartley's home.

In contrast, Hartley took the stand and denied brandishing the butcher knife at his wife or threatening to kill her. He testified that Lockley had simply fabricated the knife incident because the two men did not like each other. Hartley further testified that his firing of the shotgun at Lockley was an act of self-defense. In this respect, Hartley testified that on the night in question, he had confronted Lockley about stealing his wallet and had the loaded shotgun near him for personal protection. According to Hartley, Lockley began screaming at him, grabbed a baseball bat, and began approaching him with the bat. Hartley testified that when Lockley began violently striking the kitchen countertop with the baseball bat, he fired two warning shots into the ceiling. He claimed that the two then struggled over the baseball bat and shotgun, that Lockley struck him with the bat, that Lockley ultimately was able to wrestle the shotgun away from him, and that Lockley fled from the home with the bat and shotgun in hand.

One of Hartley's friends, Danny Norman, also testified on his behalf. Norman claimed that on the evening of December 10, he had driven to Hartley's home to pay him for work on a construction job. According to Norman, he was walking up to Hartley's front door when he saw Lockley walking away from the home with a baseball bat in one hand, and a shotgun in the other. Norman testified that Hartley came to the front door with his face bleeding and told him that a fight had just occurred.

Hartley's wife likewise testified on his behalf. She testified that they were no longer estranged and were living together again. While admitting that she and her husband had a heated argument on December 9, she denied that he ever brandished a butcher knife or chased her with one. Although she had stated otherwise in her written statement to the police, Hartley's wife claimed that she had no memory of a knife and that Lockley and his girlfriend had told her what to write in the statement.

Hartley's wife also testified to prior acts of violence by Lockley. Specifically, she testified to an incident she witnessed in 1999 in

which Lockley got in an argument with a neighbor and attempted to strike him with a shovel. Hartley's wife described another past incident in which she witnessed Lockley approach his brother with a baseball bat during an argument over money.

Finally, Hartley's wife testified about Lockley's alleged personal vendetta against Hartley. In this respect, she claimed that in 2007, Lockley told her that he hated Hartley, that he wanted to kill him, and indicated that he had "say so" as to whether Hartley would be convicted for firing the shotgun.

After hearing all of the conflicting testimony, the jury convicted Hartley of the charged offenses. Hartley filed a motion for new trial asserting that his trial counsel was ineffective for failing to locate and call other witnesses to support his justification defense. He further asserted that the verdict was contrary to the evidence and the principles of justice and equity, OCGA § 5-5-20, and decidedly and strongly against the weight of the evidence, OCGA § 5-5-21. Following an evidentiary hearing, the trial court concluded that Hartley had failed to prove his ineffective assistance claim. The trial court declined to rule on the merits of Hartley's claims under OCGA §§ 5-5-20 and 5-5-21 because Hartley did not present any evidence or argument concerning those claims at the evidentiary hearing. Hartley now appeals.

1. Although not enumerated as error, we conclude that the evidence set forth above was sufficient to entitle any rational trier of fact to find Hartley guilty beyond a reasonable doubt of the two counts of aggravated assault. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See OCGA § 16-5-21 (a) (2) ("A person commits the offense of aggravated assault when he or she assaults . . . [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury."). Lockley's testimony, standing alone, was sufficient to prove the charged crimes. See OCGA § 24-4-8 ("The testimony of a single witness is generally sufficient to establish a fact."). Additionally, the written statement of Hartley's wife was admissible substantively as a prior inconsistent statement to support the verdict of guilty. See *Buice v. State*, 281 Ga. App. 595, 596 (1) (636 SE2d 676) (2006).

2. Hartley contends that his trial counsel was ineffective for failing to locate and call additional witnesses who would have further supported his affirmative defense of justification. We are unpersuaded.

The two-prong test for determining the validity of a claim of ineffectiveness of counsel provided in *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674)

(1984), asks whether counsel's performance was deficient and, if so, whether this deficiency prejudiced the defense; that is, whether there is a reasonable probability that the outcome of the proceedings would have been different, but for counsel's deficiency.

(Citation omitted.) *Jones v. State*, 289 Ga. App. 219, 222 (2) (656 SE2d 556) (2008). If the defendant cannot satisfy either of the two prongs of the *Strickland* test, his ineffective assistance claim fails. See *Freeman v. State*, 282 Ga. App. 185, 187 (2) (638 SE2d 358) (2006). A trial court's finding that the defendant was not denied effective assistance of counsel will be affirmed unless clearly erroneous. *Bogan v. State*, 249 Ga. App. 242, 244 (2) (547 SE2d 326) (2001). And "[w]hen considering a claim of ineffective assistance, the trial court, not this Court, is the judge of witness credibility, and a trial court's denial of an ineffectiveness claim based on conflicting evidence is not clearly erroneous." (Citation and punctuation omitted.) *Wallin v. State*, 285 Ga. App. 377, 381 (646 SE2d 484) (2007).

At the new trial hearing, Hartley's trial counsel, who had practiced as a defense attorney for 27 years, testified that he met with Hartley 15 to 20 times before trial to discuss all aspects of the defense. He further stated that he also met several times with Hartley's wife to discuss what she had witnessed. According to trial counsel, he also had multiple discussions with both Hartley and his wife concerning the justification defense in particular. Trial counsel testified that during these discussions, neither Hartley nor his wife identified any potential defense witnesses who would support a justification defense other than the wife herself and Danny Norman. Trial counsel stated that in light of these discussions, he interviewed Norman prior to trial and called Norman and Hartley's wife to testify as Hartley had asked him to do. In addition, trial counsel testified that he attempted to find out all of the information he could about the case and locate all potentially relevant witnesses. Finally, trial counsel noted that he had located two prior felony convictions of Lockley that he used for impeachment purposes at trial to call into question the credibility of Lockley's version of the shotgun incident.

In contrast, Hartley and his wife testified at the new trial hearing that they both had informed trial counsel of several potential defense witnesses who would further support Hartley's justification defense, but counsel had made the decision not to call them as witnesses. Hartley proffered the testimony of those potential witnesses at the new trial hearing. None of the proffered witnesses claimed to have witnessed the shotgun incident, but rather would have supported the justification defense in other ways, such as by testifying to prior acts of violence committed by Lockley and his

alleged personal vendetta against Hartley.

"It is within the trial court's discretion to resolve conflicting testimony between trial counsel and a defendant at a hearing on motion for new trial." *Adkins v. State*, 280 Ga. 761, 762 (2) (a) (632 SE2d 650) (2006). The trial court thus was authorized to resolve the conflicting testimony and find that Hartley and his wife never identified the other potential defense witnesses to trial counsel and never provided him with information prior to trial that would have reasonably led him to those witnesses. As such, Hartley has failed to show that his counsel was deficient in failing to call those witnesses at trial. See id. at 762 (2) (a) (no ineffective assistance for failure to call alibi witnesses where defendant never informed trial counsel of the witnesses); *Driggers v. State*, 295 Ga. App. 711, 719 (4) (d) (673 SE2d 95) (2009) (trial counsel was not ineffective for failing to call potential defense witness, where there was no evidence that the defendant ever informed counsel of the witness). See also *Holmes v. State*, 272 Ga. 517, 520 (7) (529 SE2d 879) (2000); *Person v. State*, 257 Ga. App. 464, 467-468 (4) (571 SE2d 472) (2002).

Arguing for the contrary result, Hartley relies upon *Tenorio v. State*, 261 Ga. App. 609, 611-613 (3) (583 SE2d 269) (2003), and *State v. Lamb*, 287 Ga. App. 389, 391 (1) (651 SE2d 504) (2007), overruled in part, *O'Neal v. State*, 285 Ga. 361, 363, n. 4 (677 SE2d 90) (2009). His reliance is misplaced. In *Tenorio*, defense counsel's investigator was made aware of potential alibi witnesses at the defendant's place of employment, but simply shirked his responsibility to locate and interview them and then billed for investigatory services that he never performed. 261 Ga. App. at 612-613 (3). We held that the investigator's total failure to exercise any diligence in investigating the witnesses was chargeable to defense counsel. Id. In *Lamb*, we held that defense counsel was deficient where he shirked his responsibility to obtain the criminal records of a state's witness that could have been used for impeachment, instead asking the defendant himself to obtain the records of which counsel was already aware. 287 Ga. App. at 391 (1). Hence, in those two cases, unlike the present case, the uncontroverted testimony showed that defense counsel was made aware of potential witnesses or records helpful to the defense but then failed to conduct a proper follow-up investigation to obtain the evidence for use at trial.

In any event, even if the trial court believed that Hartley and his wife informed trial counsel of the witnesses, they both testified that trial counsel made a deliberate choice not to call the additional witnesses. Decisions about which witnesses to call are presumed strategic absent testimony to the contrary and do not amount to deficient performance. See *Jackson v. State*, 271 Ga. App. 317, 320 (1) (b) (609 SE2d 643) (2004); *Brown v. State*, 256 Ga. App. 603, 609

(1) (c) (568 SE2d 727) (2002).

Because Hartley has not established the deficiency prong of the *Strickland* test, his ineffective assistance claim fails. See *Freeman*, 282 Ga. App. at 187 (2). The trial court committed no error in denying Hartley's motion for a new trial on this ground.

3. Hartley contends that the trial court erred by failing to exercise its discretion and decide on the merits whether he was entitled to a new trial pursuant to OCGA §§ 5-5-20 and 5-5-21. We agree.

OCGA § 5-5-20 empowers the trial court to grant a new trial "[i]n any case when the verdict of a jury is found contrary to evidence and the principles of justice and equity." Similarly, OCGA § 5-5-21 authorizes the trial court to grant a new trial "where the verdict may be decidedly and strongly against the weight of the evidence even though there may appear to be some slight evidence in favor of the finding." OCGA §§ 5-5-20 and 5-5-21 afford the trial court broad discretion to sit as a "thirteenth juror" and weigh the evidence on a motion for new trial alleging these general grounds. See *Ricketts v. Williams*, 242 Ga. 303, 304 (248 SE2d 673) (1978); *Bhansali v. Moncada*, 275 Ga. App. 221, 222 (1) (620 SE2d 404) (2005).

Notably, where a defendant raises a claim under OCGA §§ 5-5-20 and 5-5-21 in his motion for new trial, the law imposes upon the trial court an affirmative duty to exercise its discretion and weigh the evidence to determine whether a new trial is warranted. See *Ricketts v. Williams*, 240 Ga. 148, 149 (240 SE2d 41) (1977), vacated on other grounds, *Williams v. Ricketts*, 438 U. S. 902 (98 SC 3119, 57 LE2d 1145) (1978); *Kendrick v. Kendrick*, 218 Ga. 460 (1) (128 SE2d 496) (1962); *Wilder v. State*, 193 Ga. 337, 338 (1) (18 SE2d 546) (1942); *Mills v. State*, 188 Ga. 616, 622 (4 SE2d 453) (1939). If the record reflects that the trial court failed to exercise its discretion and sit as the thirteenth juror, we will vacate and remand for the trial court to fulfill its affirmative statutory duty. See *State v. Jones*, 284 Ga. 302, 303-304 (2) (667 SE2d 76) (2008); *Rutland v. State*, 296 Ga. App. 471, 476 (3) (675 SE2d 506) (2009).

Hartley expressly raised the issue of whether the verdict was contrary to evidence and the principles of justice and equity, and decidedly and strongly against the weight of the evidence, in his motion for new trial. Nevertheless, in its order denying the motion for new trial, the trial court declined to exercise its discretion and rule on the merits of Hartley's claims under OCGA §§ 5-5-20 and 5-5-21 because Hartley did not present any evidence or argument concerning those claims at the hearing on his motion for new trial. As such, the trial court concluded that Hartley had waived and

abandoned those claims.[1]

The trial court was in error. Hartley did not waive or abandon his claims under OCGA §§ 5-5-20 and 5-5-21, which were predicated upon the already existing trial record, by not separately raising those claims in an evidentiary hearing where the focus was upon his ineffective assistance claim. See, e.g., *Wilson v. State*, 277 Ga. 195, 199 (2) (586 SE2d 669) (2003) (claim raised in motion for new trial is not waived based upon the defendant's failure to request that a hearing be conducted on that specific claim); *Jones v. State*, 272 Ga. App. 563, 564 (2) (a) (612 SE2d 852) (2005) (defendant's new trial claim is waived if not raised "in *either* his motion for new trial *or* at the hearing on the motion for new trial") (emphasis supplied). Compare *Willis v. Bozeman*, 224 Ga. 729, 731 (5) (164 SE2d 841) (1968) (defendant expressly abandoned general grounds as basis for motion for new trial); *Ga. R. & Banking Co. v. Crossley & Co.*, 128 Ga. 35 (57 SE 97) (1907) (defense counsel abandoned in writing the general grounds at hearing on motion for new trial); *Vincent v. State*, 276 Ga. App. 415, 417 (3) (623 SE2d 255) (2005) (defense counsel expressly abandoned issue at hearing on motion for new trial). Because the trial court failed to exercise its discretion and rule on the merits of Hartley's claims under OCGA §§ 5-5-20 and 5-5-21, we vacate the trial court's order denying the motion for new trial on that ground and remand the case for the trial court's proper consideration of Hartley's claims. See *Jones*, 284 Ga. at 303-304 (2); *Rutland*, 296 Ga. App. at 476 (3).

*Judgment vacated in part and case remanded with direction. Smith, P. J., and Phipps, J., concur.*

DECIDED AUGUST 5, 2009.

*Brandon A. Bullard*, for appellant.
*Fred A. Lane, Jr., District Attorney, Thomas D. Lyles, Assistant District Attorney*, for appellee.

---

[1] The state argues that the trial court's oral statements made at the end of the new trial hearing, in contrast to the court's subsequently entered order, reflect that the court did in fact weigh the evidence under OCGA §§ 5-5-20 and 5-5-21. "But the trial court's written order prevails over the court's oral conclusions made during the hearing." *Carroll v. Finova Capital Corp.*, 265 Ga. App. 517, 518 (594 SE2d 720) (2004). See also *Bishop v. State*, 176 Ga. App. 357, 358 (335 SE2d 742) (1985) ("What the judge orally declares is no judgment until it has been put in writing and entered as such.") (citation and punctuation omitted).