### A10A0026. TAYLOR v. THE STATE.
(698 SE2d 384)

BERNES, Judge.

Curtis Lane Taylor appeals the trial court's order denying his motion to withdraw his guilty plea to two counts of child molestation. Taylor contends that his trial counsel failed to advise him that entering a plea of guilty to child molestation would necessitate that he comply with the requirements of Georgia's sex offender registry statute and participate in a sex offender treatment program. As such, Taylor contends that he was entitled to withdraw his guilty plea based on ineffective assistance of counsel. We affirm the trial court's order to the extent that it held that Taylor's trial counsel was not ineffective for failing to advise Taylor that he would have to participate in a sex offender treatment program. However, in light of the United States Supreme Court's recent decision in *Padilla v. Kentucky*, ___ U. S. ___ (130 SC 1473, 176 LE2d 284) (2010), we agree with Taylor that it is constitutionally deficient for counsel not to advise his client that pleading guilty will make him subject to the sex offender registration requirements. We therefore reverse the trial

---

court's order to the extent that it held otherwise and remand for further proceedings consistent with this opinion.

The record reflects that on June 18, 2007, Taylor entered a guilty plea to two counts of child molestation under a negotiated plea agreement with a recommended sentence of ten years, to serve one year in confinement and the remaining nine years on probation. During the plea colloquy, the trial court informed Taylor that if he proceeded to trial, he was entitled to a presumption of innocence, and that the state would have to prove his guilt on the charged offenses beyond a reasonable doubt. The trial court further apprised Taylor of the maximum possible sentence he could receive and that by pleading guilty he was waiving his rights to a jury trial, to cross-examine witnesses, to subpoena witnesses on his own behalf, to testify or present other evidence at trial, and not to incriminate himself. Additionally, the trial court pointed out to Taylor that under the negotiated plea agreement, he would be subject to certain special conditions of probation, including that he receive "psychological screening and treatment as recommended" by the probation office, such that "if they recommend treatment to you as a result of the screening, you have to comply with the recommendation." Taylor stated that he understood the terms of the negotiated plea agreement, that he desired to plead guilty to the charges, that he had not been coerced or threatened into making the decision, and that he freely and voluntarily had decided to enter the plea. The trial court accepted the negotiated plea and imposed the recommended sentence.

On June 27, 2009, Taylor met with his assigned probation officer, who explained to Taylor that he would be subject to the requirements imposed by Georgia's sex offender registry statute, OCGA § 42-1-12, upon his release from confinement. The probation officer also explained to Taylor that under the sex offender treatment program administered by the state probation office, he would be required to "attend and participate fully and pay for any counseling or treatment deemed necessary by the probation office." Moreover, the officer informed Taylor that as part of the screening process and any recommended treatment, he would be required to submit to polygraph tests.

Following his initial meeting with the probation officer, Taylor filed a handwritten letter with the trial court indicating his desire to withdraw his guilty plea on June 29, 2007. The trial court deemed the pro se handwritten letter as a timely filed motion to withdraw the guilty plea.[1] Taylor was appointed new counsel, who filed an

---

[1] A motion to withdraw a guilty plea must be filed in the same term of court as the one in which the defendant was sentenced. See *Smith v. State*, 283 Ga. 376 (659 SE2d 380) (2008).

amended motion arguing that Taylor should be allowed to withdraw his guilty plea because he received ineffective assistance from his trial counsel. In this respect, Taylor alleged that his trial counsel had never advised him that he would be subject to the requirements of the sex offender registry statute or the state probation office's sex offender treatment program as part of his negotiated plea.

The trial court conducted a hearing on the motion. Taylor's trial counsel testified that he could not recall whether he had advised Taylor of the sex offender registry requirements or of the specifics of the state probation office's sex offender treatment program. Counsel further testified, however, that it was his customary practice to advise his clients on these matters before they pled guilty. Taylor testified at the hearing that he first learned of the registry requirements and treatment program in his initial meeting with his probation officer, and that he would have "taken [his] chances in trial" had he been advised of these matters before pleading guilty.

Following the hearing, the trial court denied Taylor's motion to withdraw his guilty plea. The trial court reasoned that even if one assumed that Taylor's counsel had not advised him of the registry requirements and treatment program before he pled guilty, these matters were collateral consequences of the guilty plea. As such, the trial court concluded that the failure to advise of these matters did not constitute ineffective assistance of counsel. This appeal followed.[2]

"It is well settled that after sentence is pronounced, . . . permission to allow the withdrawal of a guilty plea lies within the trial court's sound discretion, and the court's discretion will not be disturbed unless that discretion is manifestly abused." (Citation and footnote omitted.) *Maples v. State*, 293 Ga. App. 232, 234 (2) (666 SE2d 609) (2008). If the motion to withdraw is predicated on a claim of ineffective assistance of counsel, the defendant must meet the two-prong test of deficient performance and prejudice enunciated in *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). *State v. Heath*, 277 Ga. 337, 338 (588 SE2d 738) (2003). See also *Hill v. Lockhart*, 474 U. S. 52, 58 (106 SC 366, 88 LE2d 203) (1985); *Williams v. Duffy*, 270 Ga. 580, 581 (1) (513 SE2d 212) (1999). With respect to deficient performance, the test "is whether the attorney's advice falls within the range of competence of attorneys in criminal cases." (Citation and punctuation omitted.) *Will-*

Liberty County has two regular terms of court which begin on the second Monday in February and September. See OCGA § 15-6-3 (4) (C).

[2] A defendant may directly appeal the denial of a motion to withdraw a guilty plea. See *Carter v. Johnson*, 278 Ga. 202, 205 (2) (599 SE2d 170) (2004).

*iams*, 270 Ga. at 581 (1). The test for prejudice in this context is whether there is a reasonable probability that, but for his counsel's deficiency, the defendant "would not have pleaded guilty and would have insisted on going to trial." *Heath*, 277 Ga. at 338, quoting *Hill*, 474 U. S. at 59. See also *Williams*, 270 Ga. at 581 (1). If the defendant is unable to satisfy either the deficiency or prejudice prong of the test, his ineffective assistance claim fails. See *Freeman v. State*, 282 Ga. App. 185, 187 (2) (638 SE2d 358) (2006). Guided by these principles, we turn to Taylor's ineffective assistance claim predicated upon his trial counsel's alleged failure to advise him of the requirements of the sex offender registry statute and the state probation office's sex offender treatment program.

1. The trial court concluded that the requirements of the sex offender registry statute, OCGA § 42-1-12, were a collateral consequence of Taylor's plea such that even if his trial counsel failed to advise him of the requirements, it did not rise to the level of constitutionally deficient performance. It is true that the Supreme Court of Georgia has held:

> If a defendant's actual knowledge of . . . collateral consequences is not a prerequisite to his entry of a knowing and voluntary guilty plea, his lack of knowledge of those collateral consequences cannot affect the voluntariness of the plea. Accordingly, counsel's failure to advise the defendant of the collateral consequences of a guilty plea cannot rise to the level of constitutionally ineffective assistance.

(Citation omitted.) *Williams*, 270 Ga. at 581-582 (1).[3] Notably, however, *Padilla*, ___ U. S. ___ (130 SC 1473) which was decided while the current appeal was pending, calls into question the application of the direct versus collateral consequences distinction in the context of ineffective assistance claims.

In *Padilla*, the United States Supreme Court held that constitutionally competent counsel must advise their noncitizen clients

---

[3] In contrast to a collateral consequence, a direct consequence of a guilty plea is one that lengthens or alters the pronounced sentence. *Brantley v. State*, 290 Ga. App. 764, 766 (660 SE2d 846) (2008). Put another way, "[t]he distinction between direct and collateral consequences of a plea[ ] . . . turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment." (Citation and punctuation omitted.) *George v. Black*, 732 F2d 108, 110 (8th Cir. 1984). See also *Wilson v. McGinnis*, 413 F3d 196, 199 (II) (B) (2d Cir. 2005); *Steele v. Murphy*, 365 F3d 14, 17 (II) (1st Cir. 2004). Examples of collateral consequences of a guilty plea include loss of the right to bear arms, obtain a professional license, or vote; declaration of habitual offender status by a state administrative agency; and issues concerning parole eligibility. See *Williams*, 270 Ga. at 581-582 (1); *Williams v. State*, 278 Ga. App. 42, 45 (4) (628 SE2d 128) (2006); *Sherwood v. State*, 188 Ga. App. 295, 295-296 (1) (372 SE2d 677) (1988).

whether their guilty plea carries a risk of deportation. *Padilla*, ___ U. S. at ___ (130 SC at 1478). The Supreme Court noted that it had "never applied a distinction between direct and collateral consequences to define the scope of constitutionally reasonable professional assistance required under *Strickland*." (Citation and punctuation omitted.) Id. at ___ (130 SC at 1481). The Court went on to conclude that even if deportation is a collateral consequence of a guilty plea, the failure to advise a client of the risk of deportation in pleading guilty constitutes deficient performance, given the "unique nature of deportation," which has been "long recognized [as] a particularly severe penalty, [although] not, in a strict sense, a criminal sanction," and which is "uniquely difficult to classify as either a direct or a collateral consequence." (Citation and punctuation omitted.) Id. at ___ (130 SC at 1481-1482).[4]

In reaching this conclusion, the Supreme Court in *Padilla* relied on several factors: the fact that prevailing professional norms support the view that counsel must advise their clients of the risk of deportation, ___ U. S. at ___ (130 SC at 1482); the fact that deportation is "intimately related to the criminal process" in that it is "nearly an automatic result" following certain criminal convictions, id. at ___ (130 SC at 1481); and the fact that deportation is a "drastic measure" which is the "equivalent of banishment or exile." (Citation and punctuation omitted.) Id. at ___ (130 SC at 1478, 1486). The Court further explained that in the case at hand, the terms of the relevant immigration statute were "succinct, clear, and explicit" as to the consequences of the defendant pleading guilty, such that it was "not a hard case in which to find deficiency." Id. at ___ (130 SC at 1483).

A consideration of the same factors leads us to conclude that even if registration as a sex offender is a collateral consequence of a guilty plea, the failure to advise a client that his guilty plea will

---

[4] In the recent case of *Smith v. State*, 287 Ga. 391, 394 (2) (697 SE2d 177) (2010), the Supreme Court of Georgia discussed *Padilla* in addressing a *trial court*'s failure to advise a defendant that his guilty plea might have an impact on his immigration status. The Court noted that the direct versus collateral consequences distinction "relate[s] to the trial court's duty to ensure that guilty pleas are knowingly and voluntarily entered as a matter of Fifth Amendment due process, while ineffective assistance of counsel relates to the defense lawyer's duty pursuant to the Sixth Amendment." Id. at 397 (2) (c). As such, the Court pointed out that importing such a distinction into the ineffective assistance context may not be appropriate, since

> defense counsel may be ineffective in relation to a guilty plea due to professional
> duties for the representation of their individual clients that set a standard different
> – and higher – than those traditionally imposed on trial courts conducting plea
> hearings for defendants about whom the judges often know very little.

Id. But the Supreme Court of Georgia ultimately did not resolve whether the direct versus collateral consequences distinction should ever be applied in the ineffective assistance context and did not overrule the prior precedent of *Williams*, 270 Ga. at 581-582 (1).

YALE LAW LIBRARY

require registration is constitutionally deficient performance. As an initial matter, prevailing professional norms support the view that defense counsel should advise their clients concerning registration as a sex offender prior to entry of a guilty plea. Prevailing norms of practice can be reflected in American Bar Association standards such as the ABA Standards for Criminal Justice. See *Padilla*, ___ U. S. at ___ (130 SC at 1482); *Strickland*, 466 U. S. at 688; *Hall v. Lee*, 286 Ga. 79, 81 (2), n. 1 (684 SE2d 868) (2009). And the ABA Standards for Criminal Justice with accompanying commentary specifically reference registration as a sex offender as a collateral consequence about which defense counsel should advise their clients before they enter a guilty plea. See ABA Standards for Criminal Justice, Pleas of Guilty 14-3.2 (f), cmt. (3d ed. 1999). See also National Legal Aid and Defender Assn., Performance Guidelines for Criminal Representation § 6.2 (1995) (noting that defense counsel should advise their clients, prior to entry of a plea, of any "civil disabilities" that are a consequence of the contemplated plea).

Furthermore, like deportation, registration as a sex offender is "intimately related to the criminal process" in that it is an "automatic result" following certain criminal convictions. *Padilla*, ___ U. S. at ___ (130 SC at 1481). OCGA § 42-1-12 (e) provides that "[r]egistration . . . *shall be required* by any individual" who is convicted of certain designated criminal offenses, and we have emphasized that Georgia law "makes registration mandatory" for specified categories of convicted criminals.[5] *Petway v. State*, 291 Ga. App. 301, 303 (661 SE2d 667) (2008). Hence, "[o]ur law has enmeshed criminal convictions and [sex offender registration]" such that it is "most difficult" to divorce the requirement of registration from the underlying criminal conviction. (Citation and punctuation omitted.) *Padilla*, ___ U. S. at ___ (130 SC at 1481).[6]

It is likewise true that registration as a sex offender, like deportation, is a "drastic measure" (albeit a totally understandable one) with severe ramifications for a convicted criminal. (Citation and punctuation omitted.) *Padilla*, ___ U. S. at ___ (130 SC at 1478). An

---

[5] The registration statute has been amended several times since its original enactment in 1996, see *Grovenstein v. State*, 282 Ga. App. 109, 112 (2), n. 5 (637 SE2d 821) (2006) (detailing amendments to the statute over time), most recently in the 2010 regular session of the General Assembly. See Ga. L. 2010, Act 388 (H. B. 651); Ga. L. 2010, Act 389 (H. B. 571).

[6] Current law makes clear that registration as a sex offender does not constitute punishment. See *Hollie v. State*, 287 Ga. 389, 391 (3) (696 SE2d 642) (2010); *Rainer v. State*, 286 Ga. 675 (1) (690 SE2d 827) (2010). The United States Supreme Court similarly noted that deportation "is not, in a strict sense, a criminal sanction" and that "removal proceedings are civil in nature," but nevertheless found that the failure to advise a client about the risks of deportation is constitutionally deficient. (Citations and punctuation omitted.) *Padilla*, ___ U. S. at ___ (130 SC at 1481).

individual who falls within the ambit of the registry is subject to lifetime registration and to the public dissemination of his name and other information identifying him as a registered sex offender. See OCGA § 42-1-12 (f) (7), (i). Registrants also must provide, to the sheriff of the county in which the registrant resides, all of the information required by OCGA § 42-1-12 (a) (16), as well as updates to that information within 72 hours of any change. See OCGA § 42-1-12 (f). Failure of a registrant to comply with the requirements of the statute constitutes a felony offense. See OCGA § 42-1-12 (n). And, while sex offender registration is not the equivalent of banishment or exile, there is no denying that registrants face extensive restrictions on where they can live, work, and volunteer. See OCGA § 42-1-15. Indeed, certain registrants are subject to electronic monitoring for the remainder of their lives. See OCGA § 42-1-14 (e).

Lastly, there is no dispute between the parties that Taylor, who pled guilty to two counts of child molestation, was subject to the sex offender registration requirements at the time that he entered into his plea. See OCGA § 42-1-12 (a) (10) (A) (viii), (e) (2) (2007). As in *Padilla*, ___ U. S. at ___ (130 SC at 1483), the terms of the sex offender registry statute were "succinct, clear, and explicit" in setting forth the consequences of Taylor's guilty plea, and his trial counsel could have readily determined that Taylor was required to register and conveyed that information to him.

In light of these combined factors, we conclude that the failure to advise a client that pleading guilty will require him to register as a sex offender is constitutionally deficient performance, and the trial court erred in holding otherwise. Courts "have long recognized that the negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel," and "[i]t is our responsibility under the Constitution to ensure that no criminal defendant . . . is left to the mercies of incompetent counsel." (Citations and punctuation omitted.) *Padilla*, ___ U. S. at ___ (130 SC at 1486). Our holding today fulfills that responsibility by mandating that criminal defendants facing the serious consequence of registration as a sex offender be properly informed of the same.

2. In its order denying Taylor's motion to withdraw his guilty plea, the trial court assumed without deciding that Taylor's trial counsel failed to advise him that he would be required to register as a sex offender. The trial court also did not reach the issue of whether Taylor could demonstrate prejudice based upon this alleged deficiency, which could involve decisions regarding witness credibility that "are uniquely the province of the trier of fact." *Cleveland v. State*, 285 Ga. 142, 147 (674 SE2d 289) (2009) (trial court could

YALE LAW LIBRARY

reject defendant's self-serving assertion regarding plea offer). Accordingly, the case is remanded for the trial court to address these outstanding issues in the first instance. See *Padilla*, ___ U. S. at ___ (130 SC at 1487).

3. The trial court likewise concluded that Taylor's trial counsel was not constitutionally ineffective for failing to advise Taylor that entering a guilty plea would subject him to the state probation office's sex offender treatment program. Taylor cannot establish that his counsel provided ineffective assistance in this respect.

According to Taylor, his trial counsel was ineffective for failing to inform him that he would have to attend and participate in any treatment recommended by the probation office, or that he would have to submit to polygraph tests as part of the same. The transcript of the plea hearing plainly reflects, however, that both the prosecutor and the trial court expressly advised Taylor that he would be required to comply with any and all screening and treatment recommendations of the state probation office as a special condition of his probation. Hence, even if Taylor's trial counsel failed to advise him on these matters, Taylor was made cognizant of them prior to entry of his plea but nevertheless chose to plead guilty. Taylor thus cannot demonstrate that he was prejudiced by any failure of his trial counsel to advise him that he would have to comply with all treatment recommendations of the probation office, which in this case included the recommendation that he submit to polygraph tests. The failure to demonstrate such prejudice is fatal to his ineffective assistance claim. See *Brooks v. State*, 285 Ga. 246, 249 (4) (b), n. 11 (674 SE2d 871) (2009) ("[A] court may bypass the question whether counsel's performance was deficient if it can dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice.") (citation and punctuation omitted).

Taylor further contends that his trial counsel was ineffective for failing to advise him that he would have to pay for any treatment recommended by the probation office. But we have previously held that mandated costs and fees associated with probation and treatment are collateral rather than direct consequences of a guilty plea, see *Hermann v. State*, 249 Ga. App. 535, 536-537 (548 SE2d 666) (2001), and such costs and fees are not so harsh as to put them into the same category as deportation or registration as a sex offender. Because he did not have a constitutional right to be advised of such a consequence, Taylor cannot establish deficient performance by his trial counsel. See *Williams*, 270 Ga. at 582 (1).

*Judgment affirmed in part and reversed in part, and case remanded with direction. Barnes, P. J., and Senior Appellate Judge G. Alan Blackburn concur.*

*Anthony B. Williams, Jimmonique R. S. Rodgers*, for appellant.
*Tom Durden, District Attorney, Jon Hope, Assistant District Attorney*, for appellee.