**FOURTH DIVISION**
**DOYLE, P. J.,**
**COOMER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 28, 2019**

# In the Court of Appeals of Georgia

A19A0983. BRADSHAW v. THE STATE.                    DO-032

DOYLE, Presiding Judge.

Thomas Bradshaw entered a non-negotiated *Alford*[1] plea to aggravated child molestation and a non-negotiated guilty plea to child molestation and possession of drug-related objects, and he was sentenced to life in prison.[2] Bradshaw later filed a motion to withdraw his plea, which the trial court denied. Bradshaw appeals, arguing that (1) first appellate counsel was ineffective and (2) his plea was not knowingly, voluntarily, or intelligently made. For the reasons that follow, we vacate the trial court order to the extent that it denied his motion to withdraw his guilty plea on the

---

[1] See *North Carolina v. Alford*, 400 U. S. 25 (91 SCt 160, 27 LE2d 162) (1970).

[2] The court later sua sponte modified his sentence to 25 years in prison followed by probation for the remainder of his life.

basis of ineffective assistance of counsel and remand for further proceedings consistent with this opinion.[3]

The record shows that after Bradshaw was indicted, he was denied bond and remained in jail pending trial. The State offered him a plea agreement of 20 years to serve 15, which he declined to accept, proceeding to trial.

After the jury was impaneled, Bradshaw decided to enter an non-negotiated guilty plea to child molestation and possession of drug-related objects and a non-negotiated *Alford* plea to aggravated child molestation. During the plea colloquy, among other things, the trial court advised Bradshaw of his right to a jury trial and that he would be giving up that right by entering the *Alford* plea and guilty plea.

Bradshaw completed a waiver of rights form, which listed the three charges at the top of the form. He answered questions on the form, including that he was 38 years old; had a tenth grade education; was not mentally disabled or under the influence of alcohol, drugs, or medication; fully understood the charges against him; and had conferred with his attorney about the case and the possible range of sentences he could receive, including the maximum of life in prison. Bradshaw answered

---

[3] We affirm the order to the extent that the trial court sua sponte modified Bradshaw's sentence.

affirmatively that he understood he had a right to a trial by jury, to be presumed innocent, to confront and examine witnesses against him, to testify and present his own witnesses, to subpoena witnesses, to be assisted by an attorney at trial, to remain silent and not incriminate himself, to appeal any conviction if he went to trial, and that he was giving up of all those rights by pleading guilty. Bradshaw also answered affirmatively that he understood that any guilty plea could affect his immigration status if he was not a citizen and that he could withdraw his guilty plea at any time prior to pronouncement of a sentence; an "N/A" appeared by the questions asking if he understood that any negotiated plea was not binding on the court or if his attorney had explained any such negotiated agreement with him. Bradshaw denied that he had been promised or threatened in any way to influence him to enter the plea, and he answered affirmatively that he agreed to be bound to the conditions of probation attached to the waiver of rights form.

At the bottom of the form, Bradshaw's attorney signed a certification acknowledging that she had reviewed all of the questions on the form with Bradshaw; that she had explained to him all of the rights contained in the waiver form; and that she had answered any questions Bradshaw had concerning his rights and any other matters contained in the form.

3

Following the attorney's certification was a paragraph labeled "order," stating that the plea court had (1) reviewed the form; and (2) determined from the form and from further questioning of Bradshaw that (a) there was a factual basis for the plea, and (b) the plea was freely, knowingly, and voluntarily entered without duress or promises of leniency. Thereafter, the court sentenced Bradshaw to life imprisonment.

Bradshaw's attorney filed a motion to withdraw his guilty plea, arguing that he received ineffective assistance of plea counsel, his plea was not knowingly and voluntarily made, and his plea was not supported by a factual basis. Bradshaw also sent to the clerk of the court pro se letters requesting copies of his case files and asking whether he was on the list of people who were "[eaves]dropped on." The clerk responded to Bradshaw about his case file and further that "[u]nfortunately as far as giving you information as being one of the defendants involved in the eavesdropping, we are not entitled to do so nor do we have a list of the defendants involved."

At the hearing on the motion to withdraw the guilty plea, Bradshaw testified that he had intended to go to trial and proceeded to pick a jury because he was innocent. Bradshaw felt pressured to enter a plea by his attorney, who came to him with information that the victim was going to change her testimony, and he believed that the *Alford* plea he was entering was actually a bench trial before the judge.

4

Bradshaw did not believe that he was admitting guilt to any of the charges, and he did not recall entering a guilty plea to the charges of child molestation or possession of drug-related objects.

Plea counsel also testified at the hearing, and she recalled that Bradshaw was unhappy with the plea offers made by the State and wanted a "better deal," not a jury trial. Plea counsel testified that Bradshaw understood that the plea deals offered, especially the offer of 20 years to serve 15, were very good in light of his potential exposure to life in prison. Plea counsel testified that Bradshaw wanted a plea deal of 15 to serve 5, which was what another defendant was offered for child molestation charges, but the State would not consider that for Bradshaw, who was facing an aggravated child molestation charge. Plea counsel eventually found out from the victim that she intended to testify against him because she did not want to return to youth detention; counsel also testified that Bradshaw continued to refuse to take the plea offers, but after a jury was selected he stated that he wanted to enter an *Alford* plea to aggravated child molestation and would plead guilty to the other charges. Counsel stated that at no time did she tell him an *Alford* plea was a bench trial, and she advised him that if he wanted to have the judge hear his side of the story, he would have to have a trial.

After Bradshaw entered his plea and was sentenced, he contacted plea counsel, wishing to withdraw the plea; they argued, and he accused her of being ineffective. Plea counsel testified that Bradshaw accused her of being "involved with all the controversy going on with the sheriff, and that was — just to be fair, that was prior to it coming out about the recordings; and to be fair, Mr. Bradshaw had indicated a lot of concern between October of [2017] and January of [2018] about the sheriff's office being corrupt and about them trying to set him up." First appellate counsel did not investigate the issue of sheriff's office corruption further or add any information about the eavesdropping into the record.

At the conclusion of the hearing, the court denied Bradshaw's motion to withdraw his guilty plea but modified his original sentence to 25 years imprisonment followed by life on probation. Bradshaw now appeals.

1. Bradshaw first argues that he received ineffective assistance of first appellate counsel, who failed to make a record regarding the effect, if any, of the local law enforcement eavesdropping and recording of Bradshaw's conversations with his plea counsel.

As the State concedes, this case was affected by the Worth County Sheriff's Department actions of eavesdropping on jailed defendants while those defendants

were speaking with counsel. Although it is unclear how much of this information was known by plea counsel or first appellate counsel, it is clear that first appellate counsel failed to develop the record to determine whether Bradshaw was recorded illegally and if those recordings had any effect on the district attorney's prosecution of or negotiations with Bradshaw. Based on this unusal circumstance and in an abundance of caution, therefore, we "vacate the trial court's denial of [Bradshaw's] motion and remand this case to the trial court in order to develop the record regarding his claim of [first appellate counsel] ineffectiveness, after which [Bradshaw] may appeal any denial of that motion."[4]

2. Bradshaw argues that his plea was not knowingly, voluntarily, and intelligently waived because he was not sufficiently apprised of his right to a jury trial.

> A criminal defendant must personally and intelligently participate in the waiver of the constitutional right to a trial by jury. When the purported waiver of this right is questioned, the State bears the burden of showing that the waiver was made both intelligently and knowingly, either (1) by showing on the record that the defendant was cognizant of

---

[4] (Punctuation omitted.) *Watson v. State*, 307 Ga. App. 839, 841 (2) (706 SE2d 194) (2011). See also *Hills v. State*, 296 Ga. App. 101, 103 (678 SE2d 614) (2009); *Freeman v. State*, 282 Ga. App. 185, 189 (3) (638 SE2d 358) (2006).

7

the right being waived; or (2) by filling a silent or incomplete record through the use of extrinsic evidence which affirmatively shows that the waiver was knowingly and voluntarily made.[5]

Bradshaw argues that the trial court failed to properly inform him of his right to a jury trial pursuant to *Boykin v. Alabama*.[6] In support of this argument, he cites to many cases from different state and federal courts, specifically, *United States v. Duarte-Higareda*,[7] for the proposition that the plea court should have explained the minutia of the trial process — the number of jurors present, his ability to be involved in choosing the jury, the process of voir dire, etc. — in order for his waiver to be knowing and intelligent. This Court addressed a similar argument in *Seitman v. State*,[8] and held that such a specific explanation of the complexities of the jury trial process by the plea court is not necessary in order for a defendant to waive the right to the jury trial.[9] Moreover, in this case, the record is clear that Bradshaw was advised

---

[5] (Punctuation omitted.) *Seitman v. State*, 320 Ga. App. 646 (740 SE2d 368) (2013), quoting *Whitaker v. State*, 256 Ga. App. 436, 439 (2) (586 SE2d 594) (2002).

[6] 395 U. S. 238 (89 SCt 1709, 23 LE2d 274) (1969).

[7] 113 F3d 1000, 1003 (9th Cir. 1997).

[8] 320 Ga. App. 646 (740 SE2d 368) (2013).

[9] See id. at 648.

thoroughly of his right to a jury trial and the related intricacies both on the waiver of rights form and in court by the judge. Accordingly, this argument is without merit.

*Judgment affirmed in part, vacated in part, and case remanded with direction.*

*Coomer and Markle, JJ., concur.*