A09A2046. THORNTON v. THE STATE.
(689 SE2d 361)

BLACKBURN, Presiding Judge.

Robert Thornton was indicted on four counts of theft by taking[1] (Counts 1, 2, 6, and 7), and a single count each of entering an automobile with intent to commit theft[2] (Count 3), criminal damage to property in the second degree[3] (Count 4), and making false statements[4] (Count 5). Following a jury trial, Thornton was convicted on all counts, and he now appeals from the denial of his motion for a new trial. Thornton asserts: (1) that the trial court erred in denying his motion for discharge and acquittal on Counts 1 through 4 of the indictment on speedy trial grounds; (2) that the trial court erred in failing to instruct the jury on the standard for convicting a criminal defendant based solely on circumstantial evidence; (3) that the evidence was insufficient to sustain his convictions on Counts 1 through 6 of the indictment; (4) that he received ineffective assistance of counsel; and (5) that the trial court erred in failing to sever Count 7 of the indictment for trial.

Finding that the State failed to comply with Thornton's statutory speedy trial demand as to Counts 1 through 4 of the indictment, and that the trial court therefore erred in denying his motion for discharge and acquittal of those charges, we reverse Thornton's convictions as to those counts. Additionally, because the evidence was insufficient to sustain a conviction for making false statements, we also reverse Thornton's conviction on Count 5. We affirm, however, Thornton's convictions on Counts 6 and 7, finding that sufficient evidence supported the same and that evidence also

---

[1] OCGA § 16-8-2.
[2] OCGA § 16-8-18.
[3] OCGA § 16-7-23 (a) (1).
[4] OCGA § 16-10-20.

supported the trial court's finding that Thornton did not receive ineffective assistance of counsel. Additionally, in light of our reversal of Thornton's convictions on Counts 1 through 5, we find that he was not harmed by the trial court's denial of his motion to sever Count 7 for trial.

Viewed in the light most favorable to the verdict, *Drammeh v. State*,[5] the evidence shows that at approximately 4:00 a.m. on March 29, 2004, officers with the LaGrange Police Department responded to reports of a potential automobile accident in downtown LaGrange. Upon arriving at the scene, the officers observed a beer delivery truck crashed into some nearby woods. The truck, which was unoccupied, was identified as belonging to Gusto Brands, Inc., a local beverage distributor whose warehouse was located a short distance from the scene. The Gusto general manager was therefore summoned to the scene.

After making their initial investigation of the crashed delivery truck, officers noticed a gray Toyota pickup truck parked across the street. Police went to investigate and discovered Thornton sitting inside the pickup truck. When questioned, Thornton, who had been living in the pickup truck, stated that he had been asleep and had neither heard nor seen the crash of the delivery truck. Thornton voluntarily submitted to a pat-down, and police discovered a broken padlock in his front pants pocket. Police showed the broken padlock to the Gusto general manager, who was able to open the same using a master key that fit all padlocks used on Gusto delivery trucks.

As the investigation continued, the manager received permission to leave the scene temporarily, so that he could open the warehouse for business. When he approached the warehouse, the manager discovered that a second delivery truck had been driven through the gates securing the facility's parking lot.

According to the manager, all of the Gusto delivery trucks have cargo bays that are secured with padlocks, and the padlocks on each of the crashed trucks were all present and secured. Later that morning, however, Gusto employees discovered that a padlock was missing from a third delivery truck, which was still parked at the warehouse facility. Thirty-four cases of beverages were missing from that truck's open cargo bay, including 20 cases of Coors Light brand beer and 12 cases of Keystone Light brand beer.

At the time police originally questioned Thornton, he had with him in the pickup truck three six-packs of Keystone Light brand beer as well as several cardboard beverage flats used to transport canned beverages. Most of those flats bore the names of beverage brands sold

---

[5] *Drammeh v. State*, 285 Ga. App. 545, 546 (1) (646 SE2d 742) (2007).

and transported by Gusto Brands.

Police eventually determined that the pickup truck occupied by Thornton belonged to Robert McCutcheon. In the summer of 2002, McCutcheon took the truck to Thornton for repairs. There was no time frame for the repairs, because McCutcheon had another vehicle and he understood that Thornton would work on the truck when he had the time. By summer of 2003, McCutcheon knew that the repairs had been completed, but he left the pickup with Thornton so that he could attempt to sell the same. McCutcheon would then pay Thornton for his repair work when the pickup sold.

McCutcheon attempted several times thereafter to contact Thornton about the truck, which he regularly saw sitting in Thornton's yard, but he never received a response. He did not report the truck stolen, however, because, as McCutcheon explained, "I knew where [the pickup] was." In December 2003, however, McCutcheon noticed that the truck was gone from Thornton's residence, and he assumed that Thornton had moved. McCutcheon still did not report the truck stolen, however, until police contacted him in March 2004 and asked him to file a stolen vehicle report.

On August 2, 2004, the State indicted Thornton on the charges that represent Counts 1 through 4 of the current indictment. Thornton was tried on these charges in October 2004, but a mistrial was declared after the jury deadlocked. On October 20, 2004, Thornton filed a statutory demand for a speedy trial, pursuant to OCGA § 17-7-170.

On November 1, 2004, the State re-indicted Thornton to include two new counts related to Thornton's use of McCutcheon's pickup truck and his testimony regarding the same at his first trial. Specifically, while testifying in his own defense, Thornton had referred to the pickup truck as "my" pickup truck. Based on this testimony, the second indictment charged Thornton with making false statements; based on McCutcheon's report of the vehicle as stolen, the indictment also charged Thornton with the theft of McCutcheon's truck.

Following the second indictment, Thornton was arrested in December 2004 after stealing beer and cigarettes from a convenience store. Thus, on May 3, 2005, the State again re-indicted Thornton, to add an additional count of theft by taking related to his December 2004 arrest.

Prior to his September 2005 trial on all charges, Thornton moved for discharge and acquittal on Counts 1 through 4 of the current indictment on the grounds that the State had failed to comply with his speedy trial demand. The trial court held a hearing on that motion, at which Thornton's original defense counsel and two assistant district attorneys testified. Their testimony established

that, after the filing of his speedy trial demand, Thornton's case had been scheduled for trial the week of December 13, 2004. At that time, however, Georgia was transitioning from a county-based public defender system to a state-wide system. As of January 1, 2005, therefore, the Troup County Public Defender's Office, which had been handling Thornton's case, would no longer exist. As a result, Thornton's original defense counsel was preparing to move to Tifton to take a job with one of the new circuit public defender's offices. Thus, in a meeting held in the judge's chambers shortly before the scheduled trial, both defense counsel and the district attorney's office expressed a desire not to try Thornton's case the week of December 13. Rather, all parties preferred that defense counsel be working to clear up a number of the other criminal files she was handling before the county public defender's office closed. As the assistant district attorney prosecuting Thornton's case explained, "the decision was made [in the judge's chambers] not to try the case and that we were going to try and move all of the other cases that she [defense counsel] had pending with the court."

Although a decision was made to continue the case past December 13, there was no discussion about continuing the case past the term, and defense counsel never requested such a continuance. Additionally, neither party informed the judge of the speedy trial demand, and the State never requested that defense counsel withdraw that demand. Defense counsel felt that the lack of such a request was notable, because on prior occasions prosecutors had required her to withdraw a speedy trial demand if a case was being continued beyond the last term of court in which the speedy trial demand could be met.

The trial court denied the motion to dismiss Counts 1 through 4, finding that defense counsel had "implicitly" requested a continuance beyond the time she would be employed in Troup County and, because it would take new counsel time to prepare for trial, "implicit in that request was a request for a continuance for the term."

Following his conviction, Thornton was sentenced to ten years imprisonment each on Counts 1, 2, and 6, to five years imprisonment each on Counts 3, 4, and 5, and to twelve months imprisonment on Count 7, with all sentences to run concurrently. Thornton filed a motion for a new trial on October 13, 2005, was paroled on August 7, 2007, and filed an amended motion for a new trial on December 16, 2008. The trial court held a hearing on Thornton's new trial motion on March 29, 2009 and entered an order denying the same on April 1, 2009. This appeal followed.

1. OCGA § 17-7-170 (b) provides that where a defendant files a statutory demand for a speedy trial, the State must try the defendant during the term of court "when the demand for speedy trial is made

or at the next succeeding regular court term thereafter, provided that at both court terms there were juries impaneled and qualified to try the defendant. . . ." Where the State fails to do so, "the defendant shall be absolutely discharged and acquitted of the offense charged in the indictment or accusation." Id.

The Troup County Superior Court has four terms per year, beginning on the first Monday in February, May, August, and November. OCGA § 15-6-3 (14) (E). Thornton filed his speedy trial demand during the August term, and juries qualified to hear his case were impaneled during that term, after Thornton filed his motion. Accordingly, to comply with OCGA § 17-7-170, the State had to try Thornton during the November term of court, which ran from November 1, 2004 through February 4, 2005. Given the State's failure to do so, Thornton challenges the denial of his motion for discharge and acquittal on Counts 1 through 4 of the indictment. Specifically, Thornton asserts that the trial court erred in finding that he had waived his right to a speedy trial by virtue of his attorney's agreeing to a continuance beyond the week of December 13, 2004. We agree.

"[A] defendant may waive his right to automatic discharge under OCGA § 17-7-170 by any affirmative action on his part or on the part of his counsel which results in a continuance of the case *to a time outside the period of the demand.*" (Punctuation omitted; emphasis supplied.) *Cobb v. State.*[6] Where such a waiver is claimed, "[t]he State has the burden of showing that the defendant or his counsel took such affirmative action resulting in a waiver of the requirements of OCGA § 17-7-170." *Ballew v. State.*[7]

Here, even though Thornton's attorney agreed to a continuance, there is no evidence showing that she "consented to passing the case until a subsequent term" of court. (Emphasis omitted.) *Williams v. State.*[8] "[T]he continuance [agreed to] did not delay the trial past the time within which trial could be held in accordance with [Thornton's] demand," (punctuation omitted) *Weidlund v. State,*[9] because the November term of court did not end until February 4, 2005. OCGA § 15-6-3 (14) (E). And, at the hearing on Thornton's motion for discharge and acquittal, the evidence showed that juries qualified to hear Thornton's case were impaneled during at least two different trial weeks in January 2005. Thus, we cannot agree with the trial court's conclusion that a continuance past the week of December 13,

---

[6] *Cobb v. State*, 275 Ga. App. 554, 556 (2) (621 SE2d 548) (2005).

[7] *Ballew v. State*, 211 Ga. App. 672, 673 (440 SE2d 76) (1994).

[8] *Williams v. State*, 216 Ga. App. 109, 109 (1) (454 SE2d 142) (1995).

[9] *Weidlund v. State*, 191 Ga. App. 668, 670 (382 SE2d 709) (1989).

or even past the week of December 31, 2004, waived Thornton's speedy trial demand. See *Ingram v. State*[10] (request for a continuance "does not waive a speedy trial demand when the court still could have tried the case within the time required"); *Williams*, supra, 216 Ga. App. at 110 (1).

In finding that defense counsel had "implicitly" requested a continuance beyond the November 2004 term of court, the trial court relied exclusively on the fact that defense counsel was leaving her employment with Troup County and that it would take new counsel time to prepare for trial. In light of this Court's holding in *Ballew*, supra, however, the trial court's reliance on these factors was misplaced.

In *Ballew*, as the result of the transfer of defendant's case to a newly-created judicial circuit, the public defender originally appointed to represent the defendant was replaced with court-appointed private counsel. This replacement occurred after the defendant had filed a speedy trial demand, and approximately three weeks before the case was called for trial. The new trial counsel appeared at the call of the case and argued a motion to suppress on behalf of the defendant. The trial judge then informed defense counsel he would take the motion under advisement, stating "[w]e're not going to try your client today or this week either, because of your recent appointment." (Punctuation omitted.) 211 Ga. App. at 673. Trial counsel did not respond to that statement but, following the expiration of the term of court, he filed a motion on behalf of his client for discharge and acquittal. The trial court denied that motion, based upon counsel's failure to speak when the trial judge announced that the case would not proceed to trial on the date scheduled. This Court reversed, reasoning:

> Although the trial judge acted out of a concern that new trial counsel may not have had sufficient time to prepare for trial, there is nothing in the record to indicate that defense counsel was not prepared to try the case. *Moreover, there is no indication that the recent appointment of new defense counsel was a result of action taken by the defendant or counsel.* Rather, it appears that the July 1992 transfer of Union County Superior Court from the Mountain Circuit to the newly created Enotah Circuit resulted in the replacement of the public defender representing Ballew by an appointed attorney under a new system for indigent criminal defense. *There is no evidence that Ballew took any action by which he*

---

[10] *Ingram v. State*, 286 Ga. App. 662, 664 (3) (650 SE2d 743) (2007).

> *or counsel representing him caused or consented to a delay of the trial to a subsequent term.* Although defense counsel said nothing when the trial court announced in his presence that it was continuing the case, we cannot infer under these circumstances that silence was an affirmative action clearly waiving the requirements of OCGA § 17-7-170, and a consent to pass the case to a subsequent term.

(Citations omitted; emphasis supplied.) Id. at 673-674.

The same rationale applies to the circumstances at hand. Thornton's original defense counsel testified that she had already tried the case once and was prepared to try it again, if necessary. She further testified that, prior to leaving Troup County, she had discussed Thornton's case with both the supervisor of her new office and the supervisor of the office to which Thornton's case was being transferred. Both supervisors and the original defense counsel understood that, if necessary, defense counsel could return to Troup County and defend Thornton when the case was called for trial. Most importantly, there is no evidence showing that either the trial court or the prosecutor ever discussed with the newly-appointed defense counsel whether he could be ready for trial within the November term of court, or whether he wanted a continuance.

As the foregoing demonstrates, the record is devoid of evidence showing that either Thornton or any attorney representing him requested or acquiesced in the continuance of Thornton's case beyond the November 2004 term of court. The State, therefore, failed to carry its burden of proof on its claim that Thornton had waived his speedy trial demand, and Thornton was entitled to be discharged and acquitted of the offenses charged in Counts 1 through 4 of the indictment.

2. Thornton next asserts that the trial court erred in failing to instruct the jury on the standard for convicting a criminal defendant based solely on circumstantial evidence. Given that the State relied solely on circumstantial evidence only to prove Counts 1 through 4 of the indictment, this claim of error is mooted by our holding in Division 1.

3. We next address whether the evidence was sufficient to sustain Thornton's convictions on Counts 5 and 6 of the indictment.

> In determining the sufficiency of the evidence to sustain a criminal conviction, we view the record in the light most favorable to the verdict, and without affording the defendant a presumption of innocence. We determine only whether the evidence authorized the jury to find the defendant guilty beyond a reasonable doubt, and in doing so we

neither weigh that evidence nor judge the credibility of the witnesses.

(Citation omitted.) *Culver v. State*.[11]

(a) Count 5 charged Thornton with making a false statement at his first trial, in violation of OCGA § 16-10-20, which criminalizes the knowing and wilful making of "a false, fictitious, or fraudulent statement or representation . . . in any matter within the jurisdiction of any department or agency of state government or of the government of any county, city, or other political subdivision of this state." The indictment alleged that Thornton made a false statement when, during his testimony at his first trial, he referred to the pickup truck he was occupying at the time of the incident as "his vehicle when in fact said vehicle was that of Robert McCutcheon. . . ."

As the language of the indictment shows, the State's theory was that Thornton made a false statement as to the pickup truck's ownership. The record, however, contains no evidence showing that Thornton ever testified that he owned the vehicle. Rather, the record shows only that Thornton referred to the truck as "my" or "mine" when describing it during his testimony at the first trial.[12] Given that the words "my" and "mine" are possessive pronouns they can, by definition, be used to demonstrate *either* possession or ownership. Indeed, this fact is proved by the testimony of one of the investigating officers, who referred to the city police car he drove to the scene as "my patrol car." Similarly, during his testimony, the police detective in charge of the investigation identified Thornton's possession of the pickup truck by referring to it as "Mr. Thornton's truck," and as "the suspect's vehicle."

In light of the foregoing, the State failed to prove beyond a reasonable doubt that Thornton made a false statement — i.e., it failed to prove that Thornton ever affirmatively stated that he owned the pickup truck. Accordingly, Thornton's conviction on Count 5 is reversed.

(b) Count 6 of the indictment charged Thornton with theft of McCutcheon's pickup truck. To convict Thornton of this crime, the State was required to show that while "in lawful possession" of that vehicle, Thornton "unlawfully appropriate[d] [it] with the intention of depriving [McCutcheon] of the [vehicle]." OCGA § 16-8-2. "Regardless of whether an individual intends to take another's property and withhold it permanently, his intent to take it for his own temporary use without the owner's authorization evinces an intent

---

[11] *Culver v. State*, 290 Ga. App. 321 (659 SE2d 390) (2008).

[12] Notably, this testimony was given in response to questions which also referred to the pickup truck as Thornton's.

to commit a theft." (Punctuation omitted.) *Turner v. State*.[13]

Here, the evidence showed that Thornton kept the vehicle for over a year after completing the repairs to the same and that he was using it as his residence, despite the fact that McCutcheon made repeated attempts to contact Thornton about getting the truck back from him. This evidence was sufficient to sustain Thornton's conviction on Count 6. See *Thomas v. State*.[14]

> To the extent [McCutcheon's] testimony conflicted with [Thornton's on this issue], it was the function of the [jury] as the trier of fact — not this Court — to resolve the conflict. Thus, the [jury] was authorized to believe [McCutcheon] rather than [Thornton] and find [Thornton] guilty of theft.

*Marshall v. State*.[15]

4. We find no merit in Thornton's claim that he received ineffective assistance of counsel.

> To prevail on a claim of ineffective assistance of trial counsel, a defendant bears the burden of showing both that trial counsel was deficient and that he was prejudiced by the deficiency. To demonstrate deficient representation, a convicted criminal defendant must show that counsel's representation fell below an objective standard of reasonableness. Such a defendant must overcome the strong presumption that counsel's performance fell within a wide range of reasonable professional conduct and that counsel's decisions were made in the exercise of reasonable professional judgment. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the circumstances of the case.

(Punctuation omitted.) *Greene v. State*.[16]

Thornton bases his ineffective assistance claim on the fact that, at trial, his attorney introduced into evidence a videotape of Thornton's custodial interrogation by police officers, but failed to redact that portion of the videotape in which the officers questioned Thornton about a previous burglary charge. At the motion for new trial hearing, however, trial counsel testified that her decision to play

---

[13] *Turner v. State*, 273 Ga. App. 535 (1) (615 SE2d 603) (2005).
[14] *Thomas v. State*, 249 Ga. App. 571, 572 (1) (549 SE2d 408) (2001).
[15] *Marshall v. State*, 286 Ga. App. 86, 87 (1) (648 SE2d 674) (2007).
[16] *Greene v. State*, 295 Ga. App. 803, 805 (673 SE2d 292) (2009).

the unredacted videotape was a strategic one. Specifically, trial counsel explained that she felt that the videotape had "significant evidentiary value" to Thornton. She also stated that, given the way that Thornton explained the burglary charge, she felt it was better to let the jury see that discussion rather than to leave them wondering about what had been redacted.

Trial counsel's testimony represents some evidence that her decision to play the unredacted videotape was a matter of reasonable trial strategy. Thornton failed to rebut the presumption that this strategy was reasonable, and accordingly he failed to support his claim of ineffective assistance. *Greene*, supra, 295 Ga. App. at 810 (7). See also *Farris v. State*[17] ("appellate courts are generally reluctant to reverse a case on the ground of ineffective assistance when the complaint urged can reasonably be construed as involving defense counsel's trial strategy") (punctuation omitted).

5. In his final enumeration of error, Thornton argues that the trial court erred in denying his motion to sever Count 7 of the indictment for trial. This claim of error, however, was premised solely on the fact that Counts 1 through 4 and Count 7 were too similar in nature to be tried together, because they all involved the theft of beer or beer trucks. This claim of error, therefore, is mooted by our holding in Division 1, supra.

*Judgment affirmed in part and reversed in part. Adams and Doyle, JJ., concur.*

DECIDED DECEMBER 22, 2009.

*James D. Lamb*, for appellant.
*Peter J. Skandalakis, District Attorney, Lynda S. Caldwell, Assistant District Attorney*, for appellee.

---

[17] *Farris v. State*, 293 Ga. App. 674, 676 (667 SE2d 676) (2008).