### A09A1687. MARTINEZ v. THE STATE.

(692 SE2d 766)

BERNES, Judge.

Alberto Elizandro Martinez a/k/a Alberto Elizandro Lopez was indicted and tried on charges of trafficking in methamphetamine and possession of a firearm during the commission of a felony.[1] Lopez maintained that the confidential informant involved in the drug deal had entrapped him. After hearing all of the evidence, the jury found Lopez guilty of the charged offenses, and the trial court denied his amended motion for new trial. On appeal, Lopez contends that the trial court erred in denying his motion to suppress and in allowing the state to place his character in issue by introducing evidence of his prior arrest for possession of marijuana. Lopez further contends that his trial counsel rendered ineffective assistance. For the reasons discussed below, we affirm.

Following a criminal conviction, the defendant is no longer presumed innocent, and we view the evidence in the light most favorable to the verdict. See *Johnson v. State*, 289 Ga. App. 206 (656 SE2d 861) (2008). So viewed, the evidence showed that on May 19, 2003, a narcotics investigator met with a confidential informant and discussed the possibility of contacting Lopez to set up a drug deal. They agreed that the investigator would pose as the buyer and would be introduced to Lopez through the informant.

While the investigator listened on a speaker phone, the informant called Lopez and said that he knew someone interested in buying crystal methamphetamine. Lopez assured the informant that he could make the deal happen. In a series of subsequent phone conversations with Lopez, the informant introduced the investigator as the buyer, and the investigator and Lopez discussed the amount and price of the methamphetamine. Ultimately, Lopez agreed to supply the investigator with two pounds of crystal methamphetamine in return for $30,000 to be paid at the time of delivery.

According to the investigator, during their phone conversations,

---

[1] Throughout the trial, the defendant was referred to as Alberto Elizandro Lopez, and the copy of the indictment provided to the jury during its deliberations was redacted to reflect only that name, as requested by the defendant. To maintain consistency, we will refer to the defendant by that name as well.

Lopez used code words and lingo for the deal that in his training and experience were commonly used by those involved in the illegal drug trade. The investigator also testified that two pounds of crystal methamphetamine was an extremely large amount to purchase, that "[i]t's very hard to find somebody that can produce two pounds . . . within a matter of a couple of days," and that the ability to carry out such a transaction indicated someone "very well connected in the drug community" who had "done this type of thing many times before."

On May 21, 2003, Lopez agreed to meet the investigator and informant in a grocery store parking lot in Fayette County and provide a sample of the crystal methamphetamine. Undercover state and federal narcotics agents set up visual surveillance of the parking lot and arranged for additional visual surveillance to be provided by helicopter. The investigator was wired with an audio recording device so that the other agents could maintain audio surveillance of the transaction as well.

Lopez arrived at the grocery store parking lot in a black Chevrolet S-10 pickup truck driven by a co-defendant, and the investigator and informant arrived in a car driven by the investigator. When Lopez exited from the pickup truck, he greeted the informant and talked about how good it was to see him again. According to the investigator, Lopez and the informant acted like friends who had not seen each other in awhile. Lopez and his co-defendant got into the car driven by the investigator, and Lopez provided the investigator and the informant a sample of the crystal methamphetamine as they drove around the surrounding area. As the parties drove around discussing the deal, Lopez bragged about the quality of the crystal methamphetamine, quoted the investigator a separate price for purchasing marijuana from him by the pound, and assured the investigator that he would give him a price break the next time they did a deal together. The parties then drove back to the parking lot and agreed to meet later in the day to consummate the methamphetamine deal.

Undercover agents in unmarked vehicles and in the helicopter maintained visual surveillance as the pickup truck left the grocery store parking lot, stopped briefly at a pool hall, and then traveled to a private residence in Gwinnett County. Lopez and his co-defendant exited from the pickup truck and went inside the residence. They later returned to the truck with a package wrapped in a black coat. They placed the package wrapped in the coat on the front seat of the truck and drove away from the residence, with Lopez riding in the front passenger seat.

Lopez and the investigator agreed to meet at a gasoline station

on Jimmy Carter Boulevard in Gwinnett County in order to complete the deal. Undercover agents followed the pickup truck to the gasoline station while other agents maintained ground surveillance around the station and waited. The agents observed Lopez and his co-defendant park the pickup truck in a parking lot across the street from the gasoline station and then walk over to a set of pay phones at the station. Once Lopez and his co-defendant were standing by the pay phones, officers gave the takedown signal, and the two defendants were arrested.

Officers performed a warrantless search of the interior of the pickup truck. Underneath the black coat was a package of crystal methamphetamine weighing 885.33 grams. Officers also located a loaded semi-automatic handgun on the front floorboard between the driver and passenger sides of the truck. The handgun was in arm's reach of where Lopez had been sitting in the passenger seat.

Lopez was transported to the police station and agreed to speak with officers without an attorney present after being advised of his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966). Lopez told the officers that he had been fronted the crystal methamphetamine by a third party without having to pay for it, and that his plan had been to pay $26,000 to his supplier after the completion of the deal and split the remaining $4,000 with his co-defendant. Lopez indicated to the officers that he had been excited about the size of the deal.

Lopez subsequently was indicted and tried for trafficking in methamphetamine and possession of a firearm during the commission of a felony.[2] While the informant did not testify at trial, the narcotics investigator who posed as the drug buyer and several members of the surveillance team testified to the events as set out above. The state also introduced and played for the jury an audio cassette recording from the device worn by the investigator when Lopez provided him the methamphetamine sample. Additionally, the officers who interviewed Lopez testified to the admissions made by him concerning the methamphetamine deal, and the state introduced and played for the jury a video recording of a portion of the police interview.[3]

In the defense case-in-chief, Lopez admitted to possession of the methamphetamine and asserted the affirmative defense of entrap-

---

[2] The indictment named two co-defendants, including the co-defendant who had driven the pickup truck, but neither was tried with Lopez.

[3] During the police interview, Lopez requested that the officers turn off the video recorder, and the officers complied with his request. According to the officers, the interview continued after the video recorder was cut off, but Lopez "was just basically going back over the interview, the statements he had already given us."

ment.[4] See OCGA § 16-3-25.[5] Lopez testified that he was not a drug dealer and had never sold drugs before the transaction in this case, but that he had chosen to do so here because the informant had repeatedly threatened to harm Lopez and his family if the methamphetamine deal was not completed. Lopez further testified that he believed the informant's threats because the two men had once shared a jail cell and he had witnessed the informant physically attack and hurt other inmates on several occasions. Lopez explained that he had been in jail with the informant as the result of a marijuana possession charge that later had been dismissed because he was not guilty. According to Lopez, he had been charged with possessing marijuana after being stopped in a car with his uncle, who, unbeknownst to Lopez, had "a couple of joints behind the seat."

In rebuttal, the state presented the testimony of the police sergeant who had conducted the traffic stop of Lopez and his uncle that had resulted in the prior marijuana charge. The sergeant testified that the case did not involve "a couple of joints behind the seat," but rather ten packaged bundles of marijuana weighing 3.5 pounds apiece that had been hidden in a secret compartment of the car, which had been traveling from a border town notorious for drug smuggling activity. According to the sergeant, the charges against Lopez had been dismissed as part of an agreement with Lopez's uncle to plead guilty to a marijuana charge.

The state also recalled the narcotics investigator who had posed as the drug buyer. The investigator testified that based upon his experience in other drug cases, he knew that the pool hall where Lopez had stopped after providing him with the methamphetamine sample was a place "frequented . . . by numerous high level drug dealers." The investigator further testified that Lopez never appeared afraid of the informant in the interactions he had heard or observed, but rather appeared to be friends with the informant.

1. Although not enumerated as error, we conclude that the evidence presented by the state was sufficient to enable a rational trier of fact to find beyond a reasonable doubt that Lopez had not

---

[4] With respect to the firearm charge, Lopez claimed that he had never seen the firearm in the pickup truck and did not know it was there.

[5] OCGA § 16-3-25 provides:

A person is not guilty of a crime if, by entrapment, his conduct is induced or solicited by a government officer or employee, or agent of either, for the purpose of obtaining evidence to be used in prosecuting the person for commission of the crime. Entrapment exists where the idea and intention of the commission of the crime originated with a government officer or employee, or with an agent of either, and he, by undue persuasion, incitement, or deceitful means, induced the accused to commit the act which the accused would not have committed except for the conduct of such officer.

been entrapped and was guilty of trafficking in methamphetamine. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See OCGA § 16-13-31 (e); *Haralson v. State*, 223 Ga. App. 787, 789-790 (1) (479 SE2d 115) (1996); *Cody v. State*, 222 Ga. App. 468, 472 (6) (474 SE2d 669) (1996); *Norley v. State*, 170 Ga. App. 249, 250 (1) (316 SE2d 808) (1984); *Bacon v. State*, 188 Ga. App. 782, 782-783 (1) (374 SE2d 351) (1988). A rational factfinder likewise was entitled to find Lopez guilty beyond a reasonable doubt of possession of a firearm during the commission of a felony. *Jackson*, 443 U. S. 307. See OCGA § 16-11-106 (b) (5). Resolution of conflicts in the testimony and the assessment of witness credibility were for the jury, not this Court. See *Lamb v. State*, 293 Ga. App. 65, 67 (666 SE2d 462) (2008).

2. Lopez contends that the trial court erred by denying his motion to suppress the physical evidence seized from the pickup truck following the takedown. According to Lopez, the search of the truck was unconstitutional because the officers did not obtain a warrant. We disagree. The search was authorized under the automobile exception to the warrant requirement because officers had probable cause to search the pickup truck. See *Arizona v. Gant*, ___ U. S. ___ (IV) (129 SC 1710, 173 LE2d 485) (2009) (reaffirming the viability of the automobile exception to the warrant requirement).[6]

While the general rule under the Fourth Amendment is that police officers must secure a warrant prior to conducting a search, there is an exception to that requirement for the searches of automobiles. See *Maryland v. Dyson*, 527 U. S. 465, 466 (119 SC 2013, 144 LE2d 442) (1999) (per curiam). "The automobile exception provides that a police officer may search a car without a warrant if he has probable cause to believe the car contains contraband, even if there is no exigency preventing the officer from getting a search warrant." (Punctuation and footnote omitted.) *Benton v. State*, 240 Ga. App. 243 (522 SE2d 726) (1999). See *Maryland*, 527 U. S. at 466-467; *Medvar v. State*, 286 Ga. App. 177, 179 (2) (648 SE2d 406) (2007).

> Probable cause to search an automobile exists when the facts and circumstances before the officer are such as would lead a reasonably discreet and prudent man to believe that the contents of the vehicle offend the law. Probable cause need not be defined in relation to any one particular

---

[6] We pretermit the question of whether Lopez, a passenger in the pickup truck, had standing to contest the search of the truck. See generally *Harper v. State*, 300 Ga. App. 757, 760 (1), n. 4 (686 SE2d 375) (2009).

element, but may exist because of the totality of circumstances surrounding a transaction.

(Citations and punctuation omitted.) *State v. Menezes*, 286 Ga. App. 280, 283 (2) (648 SE2d 741) (2007).

Under the totality of the circumstances, the special agents who searched the pickup truck clearly had probable cause to believe that the truck contained the illegal crystal methamphetamine that was to form the basis of the drug deal. Probable cause can be predicated upon the collective knowledge of various police officers "when there is some degree of communication between them," as occurred in this case as part of the surveillance operation. *Harper v. State*, 300 Ga. App. 757, 761 (1) (a), n. 7 (686 SE2d 375) (2009). The narcotics investigator's conversations and interactions with Lopez, combined with the observations of the undercover agents who maintained continuous surveillance of the pickup truck and the movements of Lopez and his co-defendant, would have led a reasonable person to believe that the drug contraband was in the truck. Accordingly, the agents were authorized to search the pickup truck under the automobile exception, and the trial court committed no error in denying the motion to suppress. See generally *Benton*, 240 Ga. App. at 245-246 (2).

3. Lopez maintains that the trial court erred by allowing the state to place his character in issue by introducing evidence of his prior arrest for possession of marijuana through the police sergeant. We are unpersuaded because Lopez opened the door to the police sergeant's testimony. "A defendant may be impeached by showing a lack of truthfulness in his testimony, regardless of whether his general character has been placed in issue." *Parker v. State*, 169 Ga. App. 557 (1) (313 SE2d 751) (1984). See OCGA § 24-9-82 ("A witness may be impeached by disproving the facts testified to by him."). Since Lopez testified that his prior marijuana charge only involved "a couple of joints behind the seat" of which he was unaware and that the charge had been dismissed because he was not guilty, it was not error to allow the state to attempt to impeach Lopez through the rebuttal testimony of the police sergeant. See *Green v. State*, 298 Ga. App. 17, 25-26 (7) (679 SE2d 348) (2009); *Martin v. State*, 205 Ga. App. 591, 592-593 (4) (422 SE2d 876) (1992); *Long v. State*, 185 Ga. App. 277, 278 (1) (363 SE2d 807) (1987); *Parker*, 169 Ga. App. at 557 (1).

4. Lopez argues that he received ineffective assistance from his trial counsel.

The two-prong test for determining the validity of a claim of ineffectiveness of counsel provided in *Strickland v. Wash-*

*ington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), asks whether counsel's performance was deficient and, if so, whether this deficiency prejudiced the defense; that is, whether there is a reasonable probability that the outcome of the proceedings would have been different, but for counsel's deficiency. If the defendant cannot satisfy either of the two prongs of the *Strickland* test, his ineffective assistance claim fails.

(Citations and punctuation omitted.) *Hartley v. State*, 299 Ga. App. 534, 537-538 (2) (683 SE2d 109) (2009). We will affirm the trial court's finding that the defendant did not receive ineffective assistance unless clearly erroneous. Id. at 538 (2). Guided by these principles, we turn to the specific allegations of ineffective assistance raised in this case.

(a) Lopez argues that his trial counsel was ineffective by affirmatively stating that he had no objection to the admission of the handgun and bullets seized from the pickup truck when those items were tendered into evidence at trial. According to Lopez, his trial counsel was deficient for making such an affirmative statement because it had the effect of waiving his pre-trial motion to suppress the handgun and bullets. But even if trial counsel waived his motion to suppress the handgun and bullets, see *Monroe v. State*, 272 Ga. 201, 204 (6) (528 SE2d 504) (2000); *Dyer v. State*, 233 Ga. App. 770, 771-772 (505 SE2d 71) (1998), it did not prejudice Lopez because he could not succeed on the merits of the motion to suppress. As noted in Division 2, the trial court properly denied the motion to suppress the physical evidence seized from the pickup truck because the search was authorized under the automobile exception to the warrant requirement. Because there is no reasonable probability that the outcome of the proceedings would have been different but for trial counsel's alleged deficiency, Lopez cannot succeed on his ineffective assistance claim. See *Hartley*, 299 Ga. App. at 538 (2) (there is no ineffective assistance if the defendant fails to show either deficient performance or prejudice); *Dade v. State*, 292 Ga. App. 897, 903 (666 SE2d 1) (2008) (where an ineffective assistance claim is predicated on counsel's alleged failure to properly pursue a motion to suppress, the defendant must show "a reasonable probability that a motion to suppress would have succeeded").

(b) Lopez next argues that his trial counsel was ineffective by eliciting testimony from the narcotics investigator on cross-examination that the informant told the investigator that he had bought drugs from Lopez in the past. We discern no ineffective assistance under the circumstances here.

On direct examination, the narcotics investigator testified re-

garding how he had met the informant and decided to work with him. According to the investigator, he had been notified through other officers that there was an informant in the local jail who wanted to speak with a narcotics agent about cooperating on some drug deals. The investigator testified without objection that he then went to the jail and interviewed the informant, who told the investigator that "there was a fellow by the name of Alberto" whom he could contact about purchasing methamphetamine since he had "bought dope from him before."[7] On cross-examination, Lopez's trial counsel followed up by asking the investigator several questions concerning what the informant had said about his prior dealings with Lopez. When the investigator responded that the informant said that he had bought drugs from Lopez in the past, trial counsel attempted to impeach the investigator by pointing out that no mention of this was made in his report prepared as part of his investigation. Trial counsel also attempted to elicit testimony from the investigator suggesting that the informant was a low-level drug user such that it was implausible that Lopez would have had prior dealings with him, if Lopez was the high-level drug dealer that the state alleged. Additionally, trial counsel brought out on cross-examination that a felony drug charge against the informant in another case had been placed on the dead docket as a result of his cooperation, and that the investigator had relied upon the informant to set up drug deals in other cases.

At the hearing on the motion for new trial, Lopez's trial counsel

---

[7] "When, in a legal investigation, information, conversations, . . . and similar evidence are facts to explain conduct and ascertain motives, they shall be admitted in evidence not as hearsay but as original evidence." OCGA § 24-3-2. However,

> [o]nly in rare instances will the "conduct" of an investigating officer need to be "explained." Otherwise, it is error to permit an investigating officer to testify, under the guise of explaining the officer's conduct, to what other persons related to the officer during the investigation. The mere circumstance of an officer's initiation and continuation of an investigation, without more, is not a relevant inquiry.

(Citations and punctuation omitted.) *White v. State*, 273 Ga. 787, 788 (1) (546 SE2d 514) (2001). See *Teague v. State*, 252 Ga. 534, 536 (1) (314 SE2d 910) (1984); *Momon v. State*, 249 Ga. 865, 867 (294 SE2d 482) (1982). The present case involves the rare situation where what would otherwise be hearsay testimony was properly elicited by the state to explain the investigator's conduct and ascertain his motives, since Lopez was challenging the motives of the narcotics investigator and arguing that he was not acting in good faith as part of his entrapment defense. See *Teague*, 252 Ga. at 534 (1) (noting that "where the question is, whether the party acted prudently, wisely, or in good faith, the information, on which he acted, whether true or false, is original and material evidence") (citation, punctuation and emphasis omitted). See also *Bennett v. State*, 158 Ga. App. 421, 421-422 (1), 424 (3) (280 SE2d 429) (1981) (testimony concerning statements made by informant to investigator was admissible to explain the investigator's conduct in case where defendant raised an entrapment defense); *George v. State*, 242 Ga. App. 580, 582-583 (3) (530 SE2d 479) (2000) (statement was admissible to explain the officer's conduct in case where defendant asserted that the officer had fabricated the criminal charge against him).

testified that his questions on cross-examination of the narcotics investigator were a matter of trial strategy. Among other things, trial counsel testified that his trial strategy had been to show that because the investigator continued to rely upon the informant in other cases, he had an incentive to exaggerate or lie about the informant's prior dealings with Lopez.

"The scope of cross-examination is grounded in trial tactics and strategy[.]" (Citation and punctuation omitted.) *Nava v. State*, 301 Ga. App. 497, 501 (1) (d) (687 SE2d 901) (2009). "Trial tactics and strategy, however mistaken they may appear with hindsight, are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them." (Punctuation and footnote omitted.) *Wilson v. State*, 291 Ga. App. 69, 74 (4) (b) (661 SE2d 221) (2008). Trial counsel's testimony provides some evidence that his decision about what questions to ask on cross-examination of the narcotics investigator was a matter of reasonable trial strategy. Lopez "failed to rebut the presumption that this strategy was reasonable, and accordingly he failed to support his claim of ineffective assistance." *Thornton v. State*, 301 Ga. App. 784, 793 (4) (689 SE2d 361) (2009).

(c) Lopez further argues that his trial counsel was ineffective by eliciting testimony from Lopez that he met the informant while in jail on the prior possession of marijuana charge; by questioning Lopez about the circumstances surrounding his arrest on the prior charge; and by asking Lopez when he got out of jail on that charge. Lopez emphasizes that asking these questions opened the door to the state introducing damaging rebuttal testimony of the police sergeant concerning the facts surrounding the marijuana charge. See Division 3. According to Lopez, if his trial counsel had properly investigated the circumstances surrounding his prior marijuana charge, counsel would have learned that it was a large drug transaction and would have avoided asking questions about the charge during direct examination. We conclude that Lopez was not denied the effective assistance of counsel in this instance.

At the hearing on the motion for new trial, Lopez's trial counsel testified that he made a strategic decision to ask questions pertaining to Lopez's stint in jail on the prior marijuana charge based upon representations made to him by Lopez during their pre-trial meetings together. Specifically, Lopez had told counsel that the prior case involved nothing more than "a couple of joints" behind the seat of a car owned by his uncle and that the case had been dismissed. Given these representations, trial counsel made the tactical decision to have Lopez testify that he had once shared a jail cell with the informant and had witnessed him hurt other inmates on several occasions, and that any negative effects of explaining to the jury why

Lopez had been in jail would be outweighed by the overall positive effects of the jail-related testimony on his entrapment defense.

In light of trial counsel's testimony concerning the representations made to him by Lopez prior to trial, there was no deficient performance in this case.

> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether.

*Strickland*, 466 U. S. at 691 (III) (A). See also *Nicholson v. State*, 265 Ga. 711, 714-715 (4) (462 SE2d 144) (1995); *Huff v. State*, 224 Ga. App. 115, 115-116 (479 SE2d 476) (1996). Trial counsel was not required to anticipate that Lopez would mislead him about the prior marijuana charge, and because the questions posed by counsel on direct examination were based upon the misleading information supplied by Lopez, any resulting prejudice was attributable to Lopez, not to the ineffectiveness of his trial counsel. See *Nicholson*, 265 Ga. at 714-715 (4); *Huff*, 224 Ga. App. at 115-116. Consequently, Lopez has failed to carry his burden of proving ineffective assistance.

(d) Lastly, Lopez argues that his trial counsel was ineffective by failing to introduce certified copies of the informant's prior convictions in order to support his entrapment defense. However, new counsel did not raise this specific claim of ineffectiveness in the amended motion for new trial filed after her appointment to the case or during oral argument at the hearing on the motion for new trial.[8] As such, this claim of trial counsel's ineffective assistance is waived for purposes of appeal. See *Moore v. State*, 279 Ga. 45, 47-48 (8) (609 SE2d 340) (2005).

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED MARCH 26, 2010.

---

[8] With respect to his argument that trial counsel did not properly present evidence to support the entrapment defense, new counsel's sole argument in the court below was that trial counsel should have called Lopez's mother and sister as defense witnesses.

*Sharon L. Hopkins*, for appellant.

*Daniel J. Porter, District Attorney, Carole Cox, Assistant District Attorney*, for appellee.