**SECOND DIVISION
MILLER, P.J.,
MERCIER, J. and REESE, P.J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 22, 2020**

# In the Court of Appeals of Georgia

A20A0742. JOHNSON v. THE STATE.

REESE, Presiding Judge.

Julius Johnson seeks review of an order of the Superior Court of Gwinnett County, which denied his amended motion for new trial after a jury found him guilty of one count each of possession with intent to distribute heroin and trafficking heroin.[1] Johnson contends on appeal that the evidence was insufficient to support his convictions and that the trial court erred in denying his motion for a mistrial. For the reasons set forth below, we affirm.

Viewed in the light most favorable to the jury's verdict,[2] the record shows the following. On May 12, 2016, as part of a controlled buy, a confidential informant (the

---

[1] See OCGA §§ 16-13-30 (b); 16-13-31 (b) (3).

[2] See *Martinez v. State*, 303 Ga. App. 166 (692 SE2d 766) (2010).

"CI") met Johnson, also known as "Nard," behind a Hooter's restaurant on Pleasant Hill Road. As they had pre-arranged, the CI purchased an "eight ball" of heroin from Johnson. Although they had agreed to a price of $350, the CI gave Johnson another $30 when Johnson explained that he had obtained the heroin for $350 and was thus not making anything off the sale.

During the transaction, the CI asked Johnson how much it would be for a "zip" (an ounce) of heroin. Johnson offered to introduce the CI to someone who was operating out of a Super 8 hotel like it was "New Jack City."[3]

A couple of weeks later, on June 1, 2016, the CI and Johnson set up a meet for the CI to purchase the ounce. As Johnson instructed, the CI went to a Shell gas station on Pleasant Hill Road. The CI got into Johnson's car, while Johnson's cousin, Sirquone Harris,[4] obtained the heroin from a man only identified as "Polo" in another car. While they waited on Harris, Johnson bragged that he had sold someone a gram of heroin for $65, and that no one could get "clean" off his "shit." The CI explained to the jury that this meant that the heroin Johnson was selling was pure, and not cut.

_____

[3] This is presumably a reference to the 1991 movie about a rising drug lord in New York City during the crack cocaine epidemic.

[4] Harris pled guilty to trafficking heroin prior to Johnson's trial and testified against him.

2

Harris joined the two men in Johnson's car, and Harris and the CI discussed where they had met previously (and specifically, in which prison). Harris and the CI exchanged information so that, as Harris explained it, the CI could go to the "one-stop shop" the next time. The CI paid Harris $2,200 for the approximate one ounce (28.48 grams) of heroin. According to Harris, he gave "Polo" $1,000, and split the remaining $1,200 in half with Johnson.

After Johnson and his wife testified in Johnson's defense, the jury found Johnson guilty on both counts. The trial court denied Johnson's amended motion for new trial after a hearing. This appeal followed.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence. This Court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*,[5] and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, we must uphold the jury's verdict.[6]

---

[5] 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

[6] *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

In addition, "[w]hether to declare a mistrial is a question committed to the discretion of the trial judge, and the denial of a mistrial is reversible error only if it appears that a mistrial was essential to preserve the defendant's right to a fair trial."[7] With these guiding principles in mind, we turn now to Johnson's claims of error.

1. Johnson argues that the evidence was insufficient to support his convictions and specifically, that the State did not meet its burden of disproving his affirmative defense of entrapment.

Johnson testified in his own defense, admitting that he was involved in both transactions, but denying that he received any money from the sales. Johnson testified that about a week prior to the May 12 sale, he ran into the CI at a strip club. Johnson believed he was followed home from the club because when he got home, he was beaten up and robbed by three men of "Spanish descent," who said something about "Norte." Although Johnson testified that he did not know what that meant at the time, the CI testified that he was in a Spanish gang called "Norte."

A month or so later, in early May 2016, the CI met Johnson at an Applebee's restaurant, where Johnson was eating lunch with his pregnant wife. According to

[7] *McKibbins v. State*, 293 Ga. 843, 848 (3) (750 SE2d 314) (2013) (citation and punctuation omitted).

Johnson, the CI said to him, "I know you want to be there for [your daughter] to be born." Johnson testified, "I didn't really think of it as a threat. It was kind of a veiled threat, I guess, but I thought he was saying it in jest, I guess." Johnson added that the CI stated that he knew where Johnson lived.

The next time Johnson heard from the CI was May 12. Johnson testified:

> He told me that, you know, he's not going to put no pressure on me about getting the drugs. He just really wanted me to hook him up with somebody and he'll leave me alone. So I told him I couldn't get it. I didn't have access to it, but I knew somebody that did. And he — I think I called him back and told him — and asked him where did he want to meet, and he said Hooter's.

In contradiction to the testimony of Harris and the CI, Johnson testified that Harris was with him in the car during the transaction at Hooter's. Then, although Harris had already dealt with the CI, Johnson testified that Harris wanted him (Johnson) to go along for the transaction at the Shell station, both because Harris did not trust the CI and because he needed a ride.

"Entrapment consists of three distinct elements: (1) the idea for the commission of the crime must originate with the state agent; (2) the crime must be induced by the

5

agent's undue persuasion, incitement, or deceit; and (3) the defendant must not be predisposed to commit the crime."[8]

In addition to the testimony of the CI and Harris, the State presented testimony of the agents who searched the CI before and after the sale and conducted surveillance during the scene, audio recordings from a body wire worn by the CI, photographs taken during the sales, and testimony of forensic chemists with the DEA crime lab.

Even assuming that Johnson established a prima facie case of entrapment, the jury was authorized to find the State's evidence rebutted it beyond a reasonable doubt, and the evidence was sufficient to support the convictions. The jury heard an audio recording of Johnson boasting that he had sold a gram of heroin for $65 and that no one could get clean off his "shit." Although Johnson denied that he was the one who made the comment on the recording, the CI testified that Johnson offered to introduce someone who was operating in what was essentially "New Jack City." Because there was some evidence to support each fact necessary to make out the

---

[8] *Jackson v. State*, 305 Ga. App. 591, 592-593 (699 SE2d 884) (2010) (citing OCGA § 16-3-25).

6

State's case[9] and to disprove entrapment,[10] the trial court did not err in denying Johnson's motion for a new trial.

2. Johnson contends that the trial court erred in denying his motion for a mistrial after Agent Cavender testified that his duties in this case were working on a gang task force to combat violent crime, as well as targeting gang members and people who had committed crimes of violence.

Johnson moved in limine that the State be prohibited from mentioning that he was involved or affiliated with any gangs. The State advised the trial court that it had no intention of doing so.

At trial, Special Agent Damon Cavender of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") testified that, in 2016, he was in the "Organized Crime Drug Enforcement Task Force Unit," working almost exclusively with the Gwinnett County Police Department. The prosecutor then asked Cavender what his duties and responsibilities as a special agent were in 2016. Cavender replied: "To combat violent crime in Gwinnett County, Metro Atlanta area. So one of the things that we did with — in Gwinnett County specifically is we would target gang members

---

[9] See OCGA §§ 16-13-30 (b); 16-13-31 (b) (3); *Rankin*, 278 Ga. at 705.

[10] See OCGA § 16-3-25; *Jackson*, 305 Ga. App. at 593.

7

and people who'd committed crimes of violence and try to develop charges on them, whether it was through purchasing narcotics —"

At that point, Johnson's attorney interrupted, and, outside the presence of the jury, moved for a mistrial. The trial court denied the motion and instructed the jury that the agent was testifying only to his experience and assignments, and that there were no allegations of any gang conduct or involvement in Johnson's case. The court further instructed the jury to disregard that testimony, and announced that it would be "stricken" from the jury's consideration. The court denied Johnson's renewed motion for mistrial.

> As a general matter, the character of the defendant should not come into evidence unless he chooses to put his character in issue and when prejudicial matter is improperly placed before the jury, and a mistrial is appropriate if it is essential to the preservation of the defendant's right to a fair trial. Moreover, in reviewing the trial court's decision, an appellate court may consider the nature of the statement, the other evidence in the case, and the court's and counsel's action in dealing with the impropriety. Furthermore, we also consider additional facts like whether the reference to the improper character evidence is isolated and brief, whether the jury's exposure was repeated or

extensive, and whether the introduction of the objectionable evidence was inadvertent or whether it was deliberately elicited by the State.[11]

Here, the trial court's curative instruction was sufficient to protect Johnson from any prejudicial effect of Cavender's brief, general statements about his duties and responsibilities on the task force.[12] The trial court thus did not abuse its discretion in denying the motion for mistrial.[13] Accordingly, we need not address the State's invited-error argument, which is based on Johnson's cross-examination of Cavender.

*Judgment affirmed. Miller, P. J., and Mercier, J., concur*.

---

[11] *Cuyler v. State*, 344 Ga. App. 532, 537-538 (2) (811 SE2d 42) (2018) (punctuation and footnotes omitted).

[12] See *Dublin v. State*, 302 Ga. 60, 67 (4) (805 SE2d 27) (2017) ("[A] new trial will not be granted unless it is clear that the trial court's curative instruction failed to eliminate the effect of the prejudicial comment.") (citation and punctuation omitted).

[13] See *McGee v. State*, 267 Ga. 560, 564-565 (3) (480 SE2d 577) (1997) (holding that the trial court did not abuse its discretion in denying a motion for a mistrial after a witness testified that the defendant had stalked her for a year after they broke up, where the trial court immediately admonished the witness to refrain from such comments and instructed the jury to disregard the comment in its entirety).